IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MEEHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 4:17-cv-02876-PLC |
| | ) | |
| PNC FINANCIAL SERVICES GROUP, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Obligations of Appraiser Reviewers**

1.      Under the FDIC's Interagency Appraisal and Evaluation Guidelines 2010, the

duties related to appraisal reviewers include:

> "[A]n institution should review appraisals and evaluations to ensure that they comply
> with the Agencies' appraisal regulations and are consistent with supervisory guidance
> and its own internal policies. This review also should ensure that an appraisal or
> evaluation contains sufficient information and analysis to support the decision to engage
> in the transaction.
>
> Through the review process, the institution should be able to assess the reasonableness of
> the appraisal or evaluation, including whether the valuation methods, assumptions, and
> data sources are appropriate and well-supported. An institution may use the review
> findings to monitor and evaluate the competency and ongoing performance of appraisers
> and persons who perform evaluations."
>
> (FDIC Interagency Appraisal and Evaluation Guidelines 2010, Exhibit J, at Section XV,
> p. 15)

2.      The REVS group is obligated to comply with the FDIC Interagency Appraisal and

Evaluations Guidelines of 2010. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 26:

1

8–10 and 19–25, 27:1–6, 34:20–25, and 35:1–10; FDIC Interagency Appraisal and Evaluation Guidelines 2010, Exhibit J)

3.      The FDIC Interagency Appraisal and Evaluations Guidelines of 2010, Section XV Reviewing Appraisals and Evaluations, states that institutions such as PNC should, at minimum, "[a]ddress the independence, educational and training qualifications, and role of the reviewer [and r]eflect a risk-focused approach for determining the depth of the review[.]" (FDIC Interagency Appraisal and Evaluation Guidelines 2010, Exhibit J, at p. 15)

4.      The FDIC Interagency Appraisal and Evaluations Guidelines of 2010, Section XVII, Program Compliance, states "An institution's appraisal and evaluation policies should establish internal controls to promote an effective appraisal and evaluation program." and they should "[e]stablish procedures to test the quality of the appraisal and evaluation review process." (Id. at p. 20)

5.      Defendant PNC's Code of Ethics and Conduct includes values of integrity and "customer focus" and to "[a]lways act in a professional, honest, and ethical manner[.]" (PNC Code of Ethics and Conduct, Exhibit I, at Meehan04507 and Meehan4063)

6.      The REVS group is responsible for valuation products, which includes appraisal and non-appraisal products. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 27–28 and 81–83) Review appraisers, like Meehan, were tasked with reviewing appraisal products and did not review non-appraisal products. (Id. at 82–83)


**PNC took appraisal reviews from Meehan when he refused to violate the law**

7.      In January 2011, PNC removed Meehan from an appraisal review after Meehan expressed serious concerns that an appraisal's valuation of a property assumed a future lease

would be signed, even though the lease had not yet been signed and the property had been vacant for ten years. (January 2011 Review, Exhibit AA, Meehan0345–0362).

8.      Meehan refused to approve the appraisal, so PNC took his review and gave it to fellow reviewer, Ron Sacco, who complied and approved the appraisal without making any additional notations regarding the additional risk that would be incurred by relying upon future, unsigned lease agreements, or acknowledging the various issues Meehan had raised when he was the assigned reviewer. (Id. at 0355; Meehan Interrogatory, Exhibit C, at p. 1).

9.      This violated USPAP 2010-2011, Standard Rule 3-4(a) that an Appraisal Review Report "clearly and accurately set forth the appraisal review in a manner that will not be misleading;" and 3-4(b) that the Report "contain sufficient information to enable the intended users of the appraisal review to understand the report properly." (USPAP 2010-2011, Exhibit D, at U-34)

10.     In April 2011, PNC took a review from Meehan and reassigned to reviewer Steve Mustain after Meehan refused to sign off on an appraisal. The original, third-party appraiser was killed in an auto accident, so the appraiser could no longer correct the appraisal that had USPAP violations. Per REVS policy, Meehan sought to hire a new appraiser or field reviewer to fix the violations. Instead, PNC reassigned the appraisal to Mustain, who accepted the original appraisal complete with USPAP violations. (April 2011 Review, Exhibit BB, Meehan000756–0798, 756, and 781–784; Meehan Interrogatory, Exhibit C, at pp. 1–2; Meehan Deposition, Exhibit A,235:5–19).

11.     PNC pressured Meehan to ignore PNC's own policies that requires either a new appraiser or field review be conducted in such circumstances. (PNC Commercial Real Estate Appraisal Procedures July 2011, Exhibit G, §§ 6.4.5 and 6.4.6, at Meehan03499)

12. Meehan was assigned two daycare property appraisals to review in late September 2015. (October 2015 Reviews, Exhibit L, Meehan002221–02230, at 2221; Meehan002475–02484, at 2475)

13. Neither of the appraisals mentioned the licensed capacity of the daycare centers. This was important information because the use of the property would be limited depending on the number of licenses each property could receive from the State of New Jersey. (October 2015 Reviews, Exhibit L, Meehan002362–02376, at 2373, 2374; Meehan Interrogatory, Exhibit C, at p. 5)

14. Meehan emailed the appraiser the relevant information, including support from the Appraisal Institute, and also emailed REVS supervisors Doug Schoenberg, Paul Higgins, and Diana Pocker. (October 2015 Reviews, Exhibit L, Meehan002362–02376; Meehan02342–02346)

15. When the appraiser went back and factored in the license capacity of the properties, each declined in value. October 2015 Reviews, Exhibit L, Meehan002252–2255, at 02252; Meehan02475–2484, at 2475)

16. On October 14, 2015, Diana Pocker called and told Meehan she was not comfortable with the revised appraisals and change in value of the properties. She sent Meehan an email the following day asking to revert to the original appraisals. (October 2015 Reviews, Exhibit L, Meehan002232–2233; Meehan Interrogatory, Exhibit C, at p. 5)

17. Meehan declined to have the appraisers revert back to the original analysis as it would be misleading and fraudulent according to USPAP requirements. It also would be a violation of FDIC and OCC guidelines to ask the appraisers to omit all reference to the legal use

of the property and analysis, which would cause the assignment to be biased. (Meehan Deposition, Exhibit A, 158:17-25)

18. The next day, on October 16, 2015, one of the daycare properties' ("Hamilton daycare") appraisal review assignment was taken from Meehan and assigned to Paul Higgins. (October 2015 Reviews, Exhibit L, Meehan002358–2359, 2348–2356, at 2348; Meehan Interrogatory, Exhibit C, at p. 5)

19. Between October 15 and October 20, 2015 Someone at PNC asked or directed the appraiser to remove all reference to the licensed capacity at the subject and the comparable sales and rentals, remove all references regarding the governmental regulations and restrictions that encumber the property, remove all analysis pertaining to price per child and rent per child, and resubmit the original appraisals of the two properties. This was a violation of FDIC regulations and USPAP (Meehan Deposition, Exhibit A, 163:24–25, 164:1–25, 165:1–20, and 166:16–22) (Meehan Interrogatory, Exhibit C, at p. 5)

20. It is a violation of FDIC regulations and USPAP to ask someone to remove relevant information from an appraisal which results in an increase in value is a violation of USPAP and FDIC regulations, which states, "[t]o ensure their independence, such lending officials, officers, or directors must abstain from any vote or approval involving loans on which they ordered, performed, or reviewed the appraisal or evaluation.") (FDIC Interagency Appraisal and Evaluation Guidelines 2010, Exhibit J, § V, p. 3)

21. The Appraiser then submitted second revised reports with all references to licensing removed and the values were raised to the original amounts. The reports were identical to the original appraisals except for the new transmittal dates. (October 2015 Reviews, Exhibit L,

Meehan002380–2462, at 2381, 2382, and 2462; Meehan002649–2670, at 2650 and 2651; Meehan002504–2505; Meehan Deposition, Exhibit A, 165:9–20, and 166:1–22)

22.     On October 21, 2015, the other daycare property ("Belmont daycare") was from Meehan and assigned to Paul Higgins. (October 2015 Reviews, Exhibit L, Meehan002504–2508)

23.     Higgins then submitted a review that accepted the appraisals (October 2015 Reviews, Exhibit L, Meehan002348–2356, 2348 and 2356; Meehan Interrogatory, Exhibit C, at p. 5)

24.     Higgins rated Meehan the lowest in Customer Orientation/Service rating (1 out of 5) of any individual assessed by Higgins on the Assessment Form that was part of the PNC's Work Restructuring Plan in the fall of 2015. No document has been provided to Plaintiff regarding how Higgins decided Meehan deserved a "1" in this category. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 123:17–24; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

25.     By preparing two biased appraisal reports that advocates the interest of the lender, the appraiser prepared two misleading, inaccurate and not credible appraisals in violation of USPAP. (USPAP 2014-2015, Exhibit F, SR 1-1(a), (b) and (c);SR 1-2 (e) (i); SR 1-3 (b); SR 2-1(a) and (b); SR 2-2 (a) (iii); SR 2-3; Ethics Rule at p. U-7; Scope of Work Rule at U-13 and U-14; and Competency Rule at U-11)

26.     By relying exclusively on the price and rent per square foot methodologies in the appraisals, the appraiser prepared two misleading, inaccurate, and not credible appraisals in violation of USPAP. (USPAP 2014-2015, Exhibit F, Standards 1 and 2; SR 1-1(a), (b) and (c); SR 1-4(a); SR 1-4(c)(i); SR 2-1(a) and (b); SR 2-3; Ethics Rule at p. U-7; Scope of Work Rule at U-13 and U-14; and Competency Rule at U-11)

27. By removing all references to the subject's State-regulated, licensed capacity in the appraisals submitted to PNC Bank, the appraiser knowingly prepared two misleading, inaccurate, and not credible appraisals in violation of USPAP. (USPAP 2014–2015, Exhibit F, Standards 1 and 2; SR 1-1(a), (b) and (c); SR 1-2(e)(i); SR 1-4(a); SR 2-1(a) and (b); SR 2-3; Ethics Rule at p. U-7; Scope of Work Rule at U-13 and U-14; and Competency Rule at U-11)

28. The Reviewer, Paul Higgins, did knowingly perform the reviews with bias while advocating the interests of PNC Bank, which overstated the market value of The Property. He also knowingly allowed the appraiser to delete all references to the legal and economic characteristics of the properties that are relevant to the purpose and intended use of the appraisals.

29. By preparing a biased appraisal review report that advocates the interest of the lender and accepting the appraisals that had removed all references to the subject's State-regulated, licensed capacities in the appraisals, Higgins prepared two misleading, inaccurate, and not credible appraisal reviews in violation of USPAP. (USPAP 2014-2015, Exhibit F, Standards 3; SR 3-1(a), (b) and (c); SR 3-2 (d) (iv); SR 3-2 (d) (h); SR 3-3 (a) (i) and (ii); SR 3-3 (b) (i); SR 3-4 (a) and (b); SR 3-5 (g) and (h); SR 3-6; Ethics Rule at p. U-7; Scope of Work Rule at U-13 and U-14; and Competency Rule at U-11)

**PNC's culture of pressuring Meehan to ignore deficiencies in appraisals**

30. PNC supervisor Steve Mustain said Meehan should just hold his nose and sign his name when Meehan complained about the quality of work typically received from appraisers. (Meehan Interrogatory, Exhibit C, at p. 2)

31.     PNC supervisor Jeff Rettstatt said Meehan found errors in reports that he never would have found and that Meehan should only be as astute as the average reviewer. (Meehan Deposition, Exhibit A, 129:7–25, 130:1–25, 13:1–16; Meehan Interrogatory, Exhibit C, at p. 2; Meehan Self Evaluation 2014, Exhibit P, at PNCMeehan00183)

32.     PNC supervisor Jeff Rettstatt said, "Do not look for mistakes." (Meehan Deposition, Exhibit A, 129:7–25; Meehan Interrogatory, Exhibit C, at p. 1; Meehan Self Evaluation 2014, Exhibit P, at PNCMeehan00183)

33.     Meehan asked PNC supervisor Tom Silnes if PNC was more interested in quantity or quality and his response was PNC was production-oriented. (Meehan Deposition, Exhibit A, 132:8–11; Meehan Interrogatory, Exhibit C, at p. 2; Meehan Self Evaluation 2014, Exhibit P, at PNCMeehan00183)

34.     PNC supervisor Tom Silnes thought Meehan was too particular about errors found in appraisal reports and indicated it took too much time and effort to get all errors corrected. (Meehan Interrogatory, Exhibit C, at p. 2) During that same conversation, Meehan said errors needed to be corrected to comply with USPAP Standard 1 regarding having a credible appraisal and he said that USPAP Standard does not pertain to PNC's needs. (Id.; USPAP 2012-2013, Exhibit E, Standards Rule 1-1(c), p. U-16)

35.     Meehan discussed an undervalued property with PNC supervisor Tom Silnes, and he suggested Meehan accept it because there was less risk for the bank if the value was low. (Meehan Interrogatory, Exhibit C, at p. 2)

36.     PNC supervisor Tom Silnes told Meehan not go back for revisions, and he said "It's all on them. They sign the certification that it is compliant with USPAP." But Meehan said it was him, Meehan, that had to sign his name that the appraisal report is USPAP compliant.

(Meehan Interrogatory, Exhibit C, at p. 2) This would be a violation of USPAP Ethics Rule and Standard 3 Appraisal Review, Development and Reporting requirements. (USPAP 2012-2013, Exhibit E, pp. U-7, U-31, U-33, U-34, U-36, U-37).

37. PNC supervisor Tom Silnes also suggested Meehan not address errors in reports unless a loan officer specifically requested they be addressed. (Meehan Interrogatory, Exhibit C, at p. 2) In March 2012, Silnes asked Meehan why he had raised an issue about an appraisal and stated, "you should not have brought it up if the loan officer didn't state it in the LRM." Meehan said it would be misleading to ignore the value of the excess land (which was approximately 150 acres). Silnes asked why Meehan would be concerned about a misleading appraisal and questioned why Meehan didn't let it go. (Meehan Interrogatory, Exhibit C, at p. 3) A misleading appraisal is a violation of USPAP. (USPAP 2012-2013, Exhibit E, pp. U-7, SR2-1 (a) at U-22, SR 3-3 (b) (i) at U-34, SR 3-1 (a) and (c) at U-31, and SR 3-6 at U-36)

38. Around July 16, 2012, a PNC loan officer wanted particular appraisal report issues addressed and PNC supervisor Greg Camburn said during a conference call, "We don't have time to get [appraisals] right. If we tried to get them all correct we wouldn't keep up with production. We're too busy." (Meehan Interrogatory, Exhibit C, at p. 3)

39. During Meehan's 2012 performance review, Meehan's PNC supervisor Doug Schoenberg said that for appraisals with a value under $3 to $4 million, to "let it go." Meehan took notes and wrote this down at the time. (Meehan Interrogatory, Exhibit C, at p. 4; Meehan 2012 Manager Evaluation Notes, Exhibit T, at Meehan03421 in right margin of page; Meehan Deposition, Exhibit A, 200:17–25, and 201:1–21)

40.     Schoenberg wrote in Meehan's 2013 annual review that errors might be overlooked if another approach in the appraisal is weighted more heavily (Meehan Deposition, Exhibit A, 109:10-21; Meehan 2013 Manager Evaluation, Exhibit O, at PNCMeehan0186)

41.     In approximately 2014, PNC supervisor Greg Camburn left the appraisal group for another group within PNC after he reported PNC Manager Jeff Mazur to the HR Department for a violation of USPAP, and—as Meehan believes—federal banking guidelines. (Meehan Interrogatory, Exhibit C, at p. 3)

**Insufficiency of submitted appraisals and other reviewers ignoring problems**

42.     In May 2010, Plaintiff was told to go through supervisors before contacting REVS leadership, including Adam Barone, regarding any problems that would arise during the review process. (Meehan Deposition, Exhibit A, 83: 20–25, 84:11–15)

43.     Meehan complained to PNC supervisor Tom Silnes that the appraisal reviews assigned to Meehan had the lowest average fee of anyone in the group. Meehan asked how such reviews were assigned, but Silnes said he didn't know. (Meehan Interrogatory, Exhibit C, at p. 2)

44.     Meehan often complained to PNC Supervisor Douglas Schoenberg about the lack of appraisal quality, that appraisers do not proof their work, and how time-consuming it was to get a USPAP compliant report from the appraisers engaged by PNC. (Meehan Interrogatory, Exhibit C, at p. 4; Meehan Deposition, Exhibit A, 99:22–25, 100:1–2, 134:15–21, and 137:6–13; Meehan 2012 Manager Evaluation, Exhibit N, at PNCMeehan0194)

45.     PNC has testified that it would not be beneficial to have a qualified reviewer conduct a risk-based secondary review of a sample of each reviewer's work products at the REVS group. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 153: 23–25, 154:1–25,

155:1–25, and 156:1–19). The FDIC states, however, that "having a qualified reviewer conduct a risk-based, secondary review of a sample of each reviewer's work products can help achieve consistency in the review process, monitor the effectiveness of the reviewers, and address any weaknesses in a timely manner. (*Navigating the Real Estate Valuation Process*, FDIC Supervisory Insights, Winter 2011, Exhibit K, p. 4)

46.     Many times when Meehan reviewed appraisals of properties previously submitted to another PNC Reviewer, Meehan would find issues that were not properly addressed by the first reviewer. When Meehan addressed deficiencies with those appraisers, they would simply say that the appraisal was approved before by PNC. (Meehan Self Evaluation 2014, Exhibit P, at PNCMeehan0182)

47.     On June 5, 2013, PNC supervisor Douglas Schoenberg presented to the REVS group regarding an Appraiser Review Panel Discussion, where the participants stated that appraisers make simple, careless errors and it seems like a number of vendors depend on appraisal reviewers to do their proofreading. Also, Schoenberg discussed the lack of competence of some appraisers. (Meehan Interrogatory, Exhibit C, at p. 4; 2013 REVS Team Meeting Agenda & Minutes, Exhibit W, at Meehan04498)

48.     In June 2013, Meehan received push-back from a supervisory appraiser after Meehan requested the appraiser use more appropriate sales comparisons for an appraisal ("Applied Medical Technology Review"). Paul Higgins wrote that the appraiser is probably following the recipe that was accepted the last couple of times by Michael Rainey, and intimated that Meehan should just sign off on the appraisal. Meehan did not sign off on it as others at PNC wanted, and he continued his request for more appropriate sales comparisons. The appraiser subsequently submitted a revised report, where the inappropriate sales were deleted and were

replaced with the sales of arms-length fee simple acquisitions of buildings having similar highest- and best-use characteristics as the property at issue.(2013 Borland Church Appraisal, Exhibit CC, at Meehan01324; Meehan Deposition, Exhibit A, 237:19–25; Meehan Interrogatory, Exhibit C, at p. 5 and 14)

49.     PNC Procurement Manager, Fred Petrie, did not agree with the appraiser's changes to the appraisal or that Meehan did not simply follow the previously approved appraisal review. (Meehan Interrogatory, Exhibit C, at p. 5; 2013 Applied Medical Technology Review, Exhibit DD, at Meehan02189 and 2192; Meehan Deposition, Exhibit A, 112:8–25, 113:1–8, 120:18–21) As a result, Petrie was upset and had Meehan's supervisor Doug Schoenberg state that Meehan was "stubborn" in Meehan's 2013 annual review. (Meehan Interrogatory, Exhibit C, at p. 5; Meehan Deposition, Exhibit A, 108:1–9, 111:4–25, 112:1–25, 113:1–8; Meehan 2013 Manager Evaluation, Exhibit O, at Meehan0185)

**Unlawful Assessment of the "Work Restructuring Plan"**

50.     The Assessment Form ("Form" found on PNCMeehan0265) lists Paul Higgins as the Assessing Manager, and it was Higgins that performed the assessment of the ten individuals listed in table in the center of the Form. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 113–115; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)[1]

51.     Only two of the ten individuals' names are visible—Joseph Meehan and Matthew Green. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 122; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

---

[1] Plaintiff will only cite to Defendant's Exhibits 15 and 17, and will not include them as his own exhibits because they were filed under seal.

52.     Adam Barone is listed on the Form as the Approving Manager and Barone signed the Form on October 13, 2015. The only date on the Form is the hand-written date of October 13, 2015. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 114; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

53.     Defendant does not know when Higgins performed the assessment, or when this Form was presented to Barone for his signature. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 114–115; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

54.     The Assessment Form has five categories or criteria to be applied to each individual, with each category weighted differently. The score of each individual is set out under each criterion and then multiplied by each criterion's respective weight. Adding up the total of each criterion provides a total score. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 120–122; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

55.     Defendant does not know how Higgins applied the criteria to each of the individuals and how each individual received their score. Defendant does not know why any particular individual received higher or lower scores than the others. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 118:25–119:4, 115; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

56.     For example, Meehan received the lowest Customer Orientation/Service rating (1 out of 5) of any individual assessed by Defendant. Defendant does not know why. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 123:17–24; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

57.     For 2012, 2013, and 2014, Meehan received "Meets All Expectations" for Customer Service on his yearly evaluations. (Meehan 2012 Manager Evaluation, Exhibit N, at

PNCMeehan0197; Meehan 2013 Manager Evaluation, Exhibit O, at PNCMeehan0186; Meehan 2014 Manager Evaluation, Exhibit Q, at PNCMeehan0175)

58. Meehan received the lowest Teamwork rating (2 out of 5) of all the individuals assessed by Defendant. Defendant does not know why. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 123:25–124:8; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

59. For 2013 and 2014, Meehan received "Meets All Expectations" for Teamwork on his yearly evaluations. (Meehan 2013 Manager Evaluation, Exhibit O, at PNCMeehan0185; Meehan 2014 Manager Evaluation, Exhibit Q, at PNCMeehan0175). "Teamwork" was not a category on his 2012 evaluation. (Meehan 2012 Manager Evaluation, Exhibit N, at PNCMeehan0193–198)

60. Meehan tied for lowest in the Productivity rating (1 out of 5) with Matthew Green. Defendant does not know why. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 123:10–16; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

61. For 2013 and 2014, Meehan received "Meets All Expectations" for Productivity on his yearly evaluations. (Meehan 2013 Manager Evaluation, Exhibit O, at PNCMeehan0184; Meehan 2014 Manager Evaluation, Exhibit Q, at PNCMeehan0174).

62. Similarly, Defendant does not know why Meehan received a "4" for Managing Risk and a "3" for Leading Change. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 123–124; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

63. The two individuals with the lowest total scores were Joseph Meehan and Matthew Green, and they were the only two reviewers selected for termination. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 122:19–123:1; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

Respectfully submitted,


**CARTER LAW FIRM, LLC**

/s/ Jase Carter
Jase Carter, #63752
3407 S. Jefferson Ave., #109
St. Louis, MO 63118
(314) 675-1882
jase@carterfirm.law

*Attorney for Plaintiff Joseph Meehan*




## CERTIFICATE OF SERVICE

The undersigned certifies that on March 20, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification to all counsel of record.


/s/ Jase Carter
*Attorney for Plaintiff*