# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MEEHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 4:17-cv-02876-PLC |
| | ) | |
| PNC FINANCIAL SERVICES GROUP, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S ANSWERS TO DEFENDANT'S
## FIRST SET OF INTERROGATORIES

1. Identify by name, address and telephone number each person who you believe has knowledge or information regarding your claims against PNC Bank and describe in complete detail the knowledge or information you believe each person possesses, including but not limited to a complete factual description of all unlawful acts that you claim each person witnessed.

**ANSWER: The following is to the best of my understanding and recollection.**

**Ron Sacco; PNC Bank; 412-762-5980**
**In January 2011, Ron took Job #528070 away from me because I refused to delete my notes from the technical review, as it would be misleading, a violation of USPAP, a violation of PNC's Commercial Real Estate Appraisal Policy, a violation of PNC's Code of Business–Conduct and Ethics, a violation of the Appraisal Institutes Code of Professional Ethics, and a violation of federal regulatory agency requirements. Ron then provided a misleading and biased opinion and committed a substantial error of omission regarding the appraisal.**

**Adam Barone; PNC Bank; 412-762-6099. Jeff Rettstatt; JP Morgan Chase; 1111 Polaris Parkway Floor 3K Columbus OH 43240; 2050 614-217-2590. Steve Mustain; BMO Harris Bank; 111 W. Monroe; 4C Mail Code 2800, Chicago IL 60603; 312-293-8449. In February 2011 I reviewed the Park Place Apartments appraisal, Job #528291. The appraiser hired by**

1

PNC, Robert Martin, died after he submitted his appraisal. Vince Harkins had assisted Martin with the appraisal assignment. During my review I found numerous math errors, technical errors and theory errors in the appraisal report. The errors were set out in numerous e-mails and were verbally discussed with Harkins, Rettstatt and Mustain. Since I could not get revisions made to the report, Rettstatt and Adam Barone, MAI and chief appraiser for PNC Bank, could not decide whether to reassign the appraisal to Harkins, hire another appraiser, or to have the appraisal reviewed by a third-party reviewer, who could correct the errors and provide a credible appraisal. The cost for a credible report would range from $1,500 to $2,000. I refused to accept the appraisal without revisions. Since I would not accept the appraisal, the appraisal review was taken from me and reassigned to Mustain. Mustain accepted the original appraisal complete with the USPAP violations.

Jeff Rettstatt; JP Morgan Chase; 1111 Polaris Parkway Floor 3K Columbus OH 43240; 2050 614-217-2590. Steve Mustain; BMO Harris Bank; 111 W. Monroe; 4C Mail Code 2800
Chicago IL 60603; 312-293-8449. I consistently complained to Rettstatt and Mustain about the inferior quality of work PNC received from PNC's outside appraisers and the additional effort and time it took to obtain revisions from appraisers to have USPAP compliant appraisals. Rettstatt said I find errors in reports that he never would have found, that I should "not look for mistakes," and that I should only be as astute as the average reviewer. Mustain told me regarding appraisals that were not compliant to "Just hold your nose and sign your name." All have knowledge about how appraisal reviews were assigned and pushed through.

Tom Silnes; Busey Bank,10321 N. Pennsylvania Street, Indianapolis IN 46280; 317-705-9105. Silnes thought I was being too particular about errors I found in appraisal reports and indicated it took too much time and effort to get all errors corrected. He indicated that particular USPAP requirements were not as important as PNC's need to produce and approve high volumes of appraisals. I asked what would happen if a reviewer did not meet their production goals and he indicated PNC may not keep me. Silnes suggested I accept an appraisal where the property is undervalued because there was less risk for the bank if the value was low. I believe he stated, "If it is undervalued, there is less risk for the bank." During one discussion about not going back for revisions, Silnes said "It's all on them. They sign the certification that it is compliant with USPAP." Silnes suggested I not address errors unless the loan officer identified errors and asked they be addressed. I complained to Silnes about the review fees I was receiving and why I wasn't being assigned better jobs.

2

**Job # 539413 Stroudsmoor Country Inn (2012) - Silnes, my supervisor, asked why I would be concerned about a misleading appraisal and questioned why I didn't let it go**
**I reviewed a motel property that had a significant amount of excess land, approximately 150 to 200 acres as I recall. (the property was appraised in 2005 and that appraiser said 150 acres was excess land and 40 acres was for the hotel, job # 500452). The appraiser did not identify the excess land and thus did not value the excess land. I could not get the appraiser to address the excess land. He indicated he was not qualified to determine the highest and best use of the excess land. This is a direct violation of USPAP as he should not have accepted the assignment if he was not competent at determining the highest and best use of the excess land. Jeff Mazur, MAI, who worked directly under Adam Barone, got involved and questioned me why this appraisal review was dragging on. (All of the supervisors were reluctant to get Jeff involved in anything.) I explained the appraiser's defiance regarding the excess land valuation. Mazur got my supervisor involved. During a conference call Mazur told Silnes to set up a conference call with me and the appraiser. The appraiser told Silnes the same as me and the conference call ended. The appraiser eventually valued the excess land. Later, Silnes asked me why I even brought up the excess land. I believe he stated "you should not have brought it up if the loan officer didn't state it in the LRM." I said it was misleading and a USPAP violation to ignore the contributory value of the excess land.**

**Greg Camburn; PNC Bank. Tom Silnes; Busey Bank,10321 N. Pennsylvania Street, Indianapolis IN 46280; 317-705-9105**
**I reviewed an appraisal of a Schnucks grocery store in Crestwood, MO, job # 544911. The RM questioned the value. Silnes got involved and I believe his new boss asked him to look at the appraisal to see if the property may have been undervalued. Silnes contacted me and thought there were issues with the report and the value was understated as a result of the issues. Silnes and I disagreed. Greg Camburn got involved. During a conference call with me and Silnes, Camburn told Silnes "We don't have time to get them right. If we tried to get them all correct we wouldn't keep up with production. We're too busy."**

**Camburn left the group and switched to another division shortly after a conflict with Jeff Mazur. According to Doug Schoenberg, a borrower did not want the bank to hire a certain appraiser to appraise his property. Camburn thought the appraiser was the best qualified in the market. Mazur approved canceling the appraisal and hired or made Camburn hire a different appraiser. Banking regulations require the bank to ignore such requests by borrowers and banks must remain independent when ordering appraisals. Camburn reported Mazur's violation to the HR department who contacted Mazur. Camburn should have reported the violation to PNC's Ethics Department. Shortly after this Camburn left the appraisal group for another position at PNC.**

3

Tom Silnes; Busey Bank,10321 N. Pennsylvania Street, Indianapolis IN 46280; 317-705-9105. Sam Drellis; Chemical Bank; Traverse City, MI; 231-421-9020 Shiloh land appraisal Job # 529014. I wanted to get revisions made to the report since the value was likely overstated. The RM did not want a revised report because he had given the report to Paul Mckee to present to the city of Shiloh so McKee could get a $5 million TIF bond to develop the land. PNC wanted the $5 million as a take down on the note. Thus, if the value was revised downward the bank would not get $5 million from McKee. The RM wanted me to put the review on hold until the TIF was approved and then cancel the appraisal order and subsequently my review would be cancelled. The appraisal was eventually cancelled.

Wendy Pollarine-Matheny; PNC Bank.
PNC did not want me to complete a review (Job # 533739) of an Arizona Office building. The building loan was a participation deal with Wells Fargo as the lead lender, and another bank. Wells Fargo ordered the appraisal and approved it. I had to review the appraisal to approve it for PNC. I wanted to get revisions made to the report since the value was immensely overstated and biased. The RM (Wendy Pollarine-Matheny) and the other two banks did not want a revised report because a sponsor had agreed to purchase the building at the appraised value. The RM wanted me to put the review on hold until the property was sold and then she would cancel the appraisal order and subsequently my review would be cancelled. The appraisal was eventually cancelled. The RM said the bank made $8 million on the deal. Silnes was my supervisor at the time.

Doug Schoenberg, retired; 734-255-2004.
I consistently complained to Schoenberg about the inferior quality of work PNC received from PNC's outside appraisers and the additional effort and time it took to obtain revisions from appraisers to have USPAP compliant appraisals. I requested review assignments from him to achieve my production goals. He was aware others in the office believed I was too "stubborn" regarding requiring appraisals to be done properly. Schoenberg suggested letting appraisals go through if the value was less than $3 - $4 million. Schoenberg reported at a Review Team Meeting in June 2013 about an Appraiser Review Panel Discussion where the participants stated there is a continuation of simple careless errors and it seems like a number of vendors depend on us to do their proofreading.

Doug stated in my 2013 performance review "For example, errors in the Sales comparison Approach might be overlooked if the Income Approach is done correctly and given the most weight in the value conclusion." I refused to follow this directive as it would be in violation of USPAP; PNC's Commercial Real Estate Appraisal Policy; PNC's Code of

4

Business – Conduct and Ethics; the Appraisal Institutes Code of Professional Ethics; and federal regulatory agency requirements. In addition, this would be in violation of Expectations specifically addressed in a Memo written by Jeff Mazur on January 2, 2009 which states that math calculations should be checked during reviews.

Doug Schoenberg, retired; 734-255-2004. Paul Higgins; JPMorgan Chase; 1300 East Ninth Street; Cleveland OH 44114-1573; 216-781-2041; Mike Rainey, PNC Bank, 919-788-5450 # 532510. Borland Church (June 2013). I requested the appraiser use more appropriate sales since he had used properties with different highest and best uses, build-to-suit transactions, and leased fee interests. Paul Higgins wrote that the appraiser's approach had been accepted the last couple of times he appraised the property, so it shouldn't be as scrutinized.

Doug Schoenberg, retired; 734-255-2004. Fred Petrie; PNC Bank. Greg Camburn; PNC Bank. Jim Dawson; Texas Capital Bank; 2930 W. Sam Houston Pkwy. N., Suite 300 Houston TX 77042; 713-331-9692

Job #561930 Applied Medical Technology (December 2013). Fred Petrie, Procurement Manager for the Ohio group, wanted me to approve the appraiser's faulty methodology. He wrote in an e-mail that Greg Camburn and Jeff Dawson indicated it is acceptable for the appraiser to use, what the appraiser identified as "sales"; however, these sales do not represent open-market transactions. I had requested the appraiser use open-market transactions rather than the four leased, build-to-suit transactions he presented in the report. As a result of this Petrie asked my supervisor to state in my annual review that I could be stubborn.

Doug Schoenberg, retired; 734-255-2004. Diana Pockar; PNC Bank. Paul Higgins; JPMorgan Chase; 1300 East Ninth Street; Cleveland OH 44114-1573; 216-781-2041. Job Nos. 565492 Hamilton and 565493 Belmont September-October 2015. Two day care properties I reviewed and submitted 10/15/15 where the appraiser lowered his value. Diana Pockar, Supervising Appraiser, asked me to have the appraiser remove the analysis I requested so that the values would increase to their original values. I refused. Both reviews were taken from me and reassigned to Paul Higgins. Higgins had the appraiser revert back to the original values and signed off on the values. The appraiser hired by Pockar was not familiar with Day Care properties and wasn't aware they are licensed by the state. PNC should have hired someone with the expertise and competency to handle this special purpose property assignment.

5

2. Identify all communications that you have had with any person (including, but not limited to, Defendant and its current or former employees and agents and any governmental body) regarding your claims against PNC Bank or any of the facts underlying the Petition and, with respect to each communication, state the name, address and telephone number of each person with whom you communicated and the date, means and substance of each communication.

**ANSWER: Objection. The interrogatory is overly broad and unduly burdensome if Defendant seeks Plaintiff to identify every communication that occurred while Plaintiff was employed by PNC relating to his claim. Plaintiff's lengthy responses to this interrogatory and Interrogatory Number 1 identifies many such communications. Plaintiff's following responses applies to communications that occurred after he was told by PNC he would be terminated.**

**Joseph F. Rose, Bank of America, Commercial Valuation Services; 7800 Forsyth Blvd., 4th Floor M01-076-04-02, Clayton, MO 63105; (636) 278-1369. I spoke to Rose via phone call in August or September 2017. It was a general conversation about our experiences working at PNC, the nature of our work, the thoroughness of appraisal reviews at PNC and PNC's instructions on how to review appraisals, instances PNC employees advocated to approve appraisals despite violations of law and public policy, and my reputation for not approving improper appraisals despite pressures from appraisers.**

**Matthew Wayne Green; 910-214-6201; 222 E Monroe Street, (Not certain about the street number); NC 28461. I spoke to Matt via phone call in August and September 2017. It was a general conversation about our experiences at PNC, the nature of our work, and his termination.**

**Paul Higgins; JPMorgan Chase; 1300 East Ninth Street, Cleveland OH 44114-1573; 216-781-2041. I spoke to Paul via telephone in August and October 2017. It was a general conversation about our experiences working at PNC, the nature of our work, the thoroughness of appraisal reviews at PNC, how PNC was solely focused on production and not concerned with the adequacy or thoroughness of reviews like JPMorgan Chase, that Paul was asked to submit and did submit production reports with productivity rankings of each employee in the group shortly before I was terminated, and that Paul believed my termination was based on production.**

**Tom Silnes; Busey Bank; 10321 N. Pennsylvania Street, Indianapolis IN 46280; 317-705-9105. I spoke to Tom in September or October 2017. The conversation briefly touched on our work at PNC and the appraisal review process.**

**Darlene Trimble; PNC Bank; 502-581-7322. Darlene called me shortly after I was told that I would be terminated from PNC. She called to say goodbye and that I was one of bank's sharpest reviewers.**

**Intermittently since 2015: The following are individuals I've told very basic information about the case since 2015, including that I was terminated and I may file or had filed a lawsuit against PNC because I refused to violate the law. I may have had similar vague conversation with others that I have yet to recall. Bev Lynch, 314-608-2518; Tom Perry, 636-629-0084; Bob Pfeiffer, 636-578-7331; Linda Dunn, 314-550-3465; Marianne Hicks, 636-293-0199; Jeri Ort, 636-488-501; Vickie Blaine, 618-514-1755; Jeff Ragsdale 314-479-7974.**

3. Identify all persons from whom you or your representative have taken formal or informal statements (including, but not limited to, oral statements, notes, affidavits or declarations) concerning your claims against PNC Bank, including the name, address and telephone number of each such person and the date(s) on which the statements were taken.

**ANSWER: Objection. Seeks attorney work product. This interrogatory calls for tangible work product.**

4. State whether you intend to rely on any alleged admissions made by Defendant and/or its agents and, if so, identify the person making the admission, the person(s) to whom the admission was made, any document or oral communication relating to such admission and the substance of each such admission.

**ANSWER: Objection. Calls for attorney work product. This question necessarily calls for an attorney's mental impressions, conclusions, opinions and legal theories.**

5. Describe all your employment positions, including periods of self-employment, held since you were 18 years old. As to each such work experience state:

(i) the name of the person or entity (if any) for whom you worked;

(ii) the address where you worked;

(iii) your title or position;

(iv) a description of your duties and responsibilities, and of the work you performed;

(v) the period (dates) during which you held each job and the reasons for your separation from the employment, if any; and

(vi) your rate of compensation, or a statement of the amount of money you earned at each such job.

**ANSWER: Objection. It is not relevant nor necessary to provide such information as the scope is far too broad. Plaintiff has provided his resume in his produced documents and provides the following that dates back to 1996.**
**2004-2015 Assistant Vice President/Senior Review Appraiser at PNC/National City Bank**
**1996-2004 President, Meehan Appraisal Company, owned real property appraisal company in St. Louis, Missouri.**

6. Describe all efforts, both successful and unsuccessful, of any kind that you have made to find employment, work or otherwise earn income, whether as an employee (full-time, part-time, temporary, contract or otherwise), independent contractor, or through self employment, at any time since you stopped working for PNC Bank and, for each, state (i) the name, address and telephone number of each employer or person to whom you have submitted an application or resume or to whom you have inquired (orally or in writing) regarding

8

employment opportunities; (ii) the date(s) of each such contact, application or inquiry; (iii) a description of the title of the position applied for and the offered pay, commission, bonus, benefits and work schedule (if known); (iv) whether you were offered and accepted any of the positions sought; and (v) whether you rejected any offer of employment and, if so, the date of and reason for any such rejection.

**ANSWER:**

**I've consistently looked for work since I was notified I would be terminated. I have contacted numerous banks and appraisal firms in the St. Louis metropolitan area, plus one bank in Kansas City, MO via telephone, since my termination. The majority of those contacts are colleagues of mine I became acquainted with during my 30 years of being a real estate appraiser. There were, and continue to be, no review appraiser positions available in the St. Louis metropolitan area.**

**In addition, since my termination I have submitted numerous resumes to banks and other entities throughout the US via the Monster website. I have not had one contact or inquiry from these submissions.**

**I receive help wanted notifications from Monster on a daily basis. Most of these are out of state, and/or for positions that are not for appraisal review work. Some of these may be for a mortgage loan processor, or a client relationship delivery manager, a credit analyst, or auto claims adjuster.**

**Since my termination, I have searched both the Appraisal Institute website for national job openings, and the St. Louis Chapter of the Appraisal Institute for local openings.**

**Bill Heyden was interested in talking to me about working as a fee appraiser for him. I was concerned that Heyden and I would not have the same work ethic. Heyden had been placed on probation in Nebraska and subject to discipline in Missouri for USPAP violations.**

**I spoke to Jeff Thornhill, chief appraiser at First Bank. He said First Bank had let Doug Johnston go and there were no openings there for review appraisers. He said there may be an opening in August, 2016. Richard LaViolette announced he was running for political office and if he won the primary election in August 2016, he would resign his from position**

9

**at First Bank. Thornhill asked how old I was. After I told him, he stated he did not realize I was that old.**

7. Itemize your total income month by month for the period from December 1, 2015, until the time of trial, including income derived from any employer, self-employment, insurance benefits, workers' compensation benefits, disability benefits, unemployment benefits and/or benefits received from state, local or federal agencies. In doing so, please identify the source of income and the amount attributed to each source.

**ANSWER:**

**MO unemployment – Income from January 2016 through May 2016 totaled $6,400.**

**Board of Equalization – Hearing officer for tax appeals. Income from July 2016 through August 2016 was $825. Income from July 2017 through August 2017 was $7,575.**

| | **2015** | **2016** | **2017** | **2018** |
|---|---|---|---|---|
| **Jan** | | $960 | $0 | $0 |
| **Feb** | | $1,280 | $0 | $0 |
| **mar** | | $1,280 | $0 | $0 |
| **April** | | $1,280 | | $0 |
| **May** | | $1,600 | $0 | $0 |
| **June** | | $0 | $0 | $0 |
| **July** | | $675 | $2,325 | $0 |
| **Aug** | | $150 | $5,250 | $0 |
| **Sept** | | $0 | $0 | $0 |
| **Oct** | | $0 | $0 | $0 |

10

| | | | | |
|---|---|---|---|---|
| Nov | $0 | $0 | $0 | $0 |
| Dec | $0 | $0 | $0 | $0 |
| Total | $0 | $7,225 | $7,575 | $0 |

8. With respect to all economic damages (e.g., back pay, front pay, lost benefits, etc.) and non-economic damages (e.g., emotional distress and anguish, etc.) that you claim in this action, please provide a detailed computation showing how you calculate the exact amount of each type of damages that you claim and identify all documents that support each damages claim.

**ANSWER: See Plaintiff's computation of damages provided Defendant in Plaintiff's Initial Disclosures.**

9. If you contend that you sustained non-economic damages (e.g., emotional distress, mental anguish, physical or emotional injury, etc.) as a result of Defendant's alleged actions or omissions, identify by name and address every health care provider that treated and/or examined you in connection with your alleged non-economic damages, the nature and extent of the examination or treatment received from each such health care provider, and the diagnosis or prognosis made by each such health care provider. Please provide signed Medical Authorizations (form enclosed herein) permitting the release of your medical records to this firm.

**ANSWER: Objection. Plaintiff has not sought, nor received, any medical treatment by any health care provider in connection with his non-economic damages. If this changes, Plaintiff will supplement this answer. Therefore, until such time, there is no relevant basis for Defendant to seek his medical information, and especially not through the provided Authorization that unnecessarily invades the privacy of Plaintiff.**

11

10. Identify by name, address, and area of specialization each and every health care provider who has treated, examined or consulted with you with respect to any mental, psychological, or emotional condition within the last ten years, and identify the dates of each such consultation, examination or treatment. Please provide signed Medical Authorizations (form enclosed herein) permitting the release of your medical records to this firm.

**ANSWER: Objection. This interrogatory is completely irrelevant. There is nothing in this interrogatory that even brushes upon Plaintiff's claims or Defendant's defenses. Plaintiff has not sought, nor received, any medical treatment by any health care provider in connection with his non-economic damages. It is Defendant's burden to demonstrate how Plaintiff's "mental, psychological, or emotional condition within the last ten years," has anything to do with this case. Therefore, until such time, there is no relevant basis for Defendant to seek his medical information, and especially not through the provided Authorization that unnecessarily invades the privacy of Plaintiff.**

11. Identify all expert witnesses whom you expect to testify in this matter. For each expert, state the subject matter upon which the expert is expected to testify, the substance of the facts and opinions to which each expert is expected to testify, and a summary of the grounds for each opinion.

**ANSWER: No expert has been identified at this time, but Plaintiff will supplement this answer to fully conform to the Federal Rules of Civil Procedure and the Court's Scheduling Order if such an expert is identified.**

12. Identify all witnesses whom you intend to call, or whom you may call, to testify at the trial of this matter. For each witness, state the substance of the facts to which the witness is expected to testify.

**ANSWER: Objection. Seeks attorney work product. This interrogatory necessarily relies upon an attorney's mental impressions, conclusions, opinions, and legal theories. It is also far too early for any such identification to occur. Plaintiff will fully comply with all pre-trial orders or agreements between the parties.**

13. If you have ever made any formal or informal complaint, claim, charge, grievance or allegation of discrimination, harassment, wrongful termination or retaliation against any employer other than PNC Bank, identify the employer and state the basis for each complaint, claim, charge, grievance or allegation.

**ANSWER: No.**

14. Identify and describe m complete detail all civil, family, criminal, and/or administrative action(s) or lawsuits in which you have been a party, a witness, and/or deposed.

**ANSWER: I was involved in an auto accident in the early 1980's. I do not believe a lawsuit was ever filed. The case was settled. Also, I was deposed as an expert witness for two real estate tax appeal cases: one in St. Louis, County, MO and one in Jefferson County, MO. Both of these were in the mid 1990's. I appraised both properties and testified as to my value opinion.**

15. State whether you have ever been convicted of a crime. If so, state the nature of the crime for which you were convicted and the date of the conviction.

**ANSWER: No.**

16. If you contend that Defendant treated you differently than any similarly-situated employee(s), please identify all such employees and describe in complete detail all facts supporting your contention.

**ANSWER: PNC terminated my employment while not terminating individuals with less experience, education, qualifications, and many received higher salaries. I believe I was more thorough in my appraisal reviews than similarly-situated employees, which led to my termination, yet other co-workers were rewarded with continuing employment and receiving additional work assignments, even after making mistakes or failing to follow the law and public policy regarding appraisal reviews.**

**The individuals who were not severed include, but are not limited to: Paul Higgins; Fred Petrie; Jim Dawson; Ris Gilad; Scott Valore; Laura Laurent; Diana Pockar; Luke Veverka; Mike Rainey; Patrick Bender; Douglas Gilbert; Clancy Kelly, Pat O'Connell;**

Veronica Weiland; Melanie Perryman; Doug Schoenberg; Bill Eckert; Oscar Hill; Darlene Trimble; Andy Donaldson; Ron Sacco; Susan Sharp; Pat Bender; Janet Matney; and Beth Harvey.

I also believe I was the only reviewer in the group who was not supplied with a laptop. I only had a desktop PC at the office. Thus, I was unable to take work home in the evenings, weekends, holidays, snow days, etc. PNC would not allow employees to download files to a USB drive, or upload files to PNC computers. Thus, I could not work at home on my personal desktop PC.

I was assigned to review a restaurant on leased land and when I read the appraisal report I discovered the appraiser failed to include the contributory reversion value at the end of the land lease term. When I asked him to include the reversion value of the land and building he told me Scot Valore had approved ignoring the reversion value. This is a violation of USPAP because it was misleading to ignore the reversion value and represents the appraiser's incompetency since he did not understand the methodology required to value the leased fee interest in a land lease. I had to have the appraisal revised which took extra time. If Valore would have had the required knowledge and experience the appraisal would have been performed correctly the first time.

Mike Rainey accepted an appraisal of a church/community center. Paul Higgins ordered the appraisal and was in charge of this one. I reviewed an appraisal of the same property by the same appraiser at a later date. When I reviewed it the appraiser had used sales of dissimilar properties which is a violation of USPAP. When I looked at the prior appraisal and review I discovered he had done the same thing originally. When I asked the appraiser to revise the appraisal, Paul Higgins suggested it would be acceptable to accept the non-compliant appraisal report because they had approved the appraiser's methods previously.

17. If you contend that Defendant violated any of its policies, procedures, and/or practices with respect to your employment, identify all such policies, procedures, and/or practices and describe in detail all facts supporting your contention. Attach any relevant documents related to this interrogatory.

ANSWER: Please see Answer Nos. 1, 2, and 16, detailing PNC's conduct. PNC did not uphold its own standards of honesty, thoroughness, commitment to customers, ethics, and PNC's repeated commitment to fully conform to all laws, regulations, and industry best practices. Such conduct violated the following policies and procedures:
PNC Bank Commercial Real Estate Appraisal Procedures
Memo dated January 2, 2009 by Jeffrey A. Mazur

14

**PNC Real Estate Valuation Services Commercial Real Estate Appraisal Procedures**
**PNC Bank Real Estate Valuation Services (REVS)**
**PNC Code of Business Conduct and Ethics**
**PNC Real Estate Appraisal Policy**

18. Identify all e-mail addresses, personal and professional, that you have used from 2013 to the present.

**ANSWER: Joseph.meehan@pnc.com; jmeestl@charter.net**

19. Identify all cell phone numbers and providers that you have used from 2013 to the present.

**ANSWER: 314-239-4207 (Tracfone); 314-420-9437 (Consumer Cellular)**

20. Identify the date and substance of each and every posting you have made to Facebook, LinkedIn, MySpace, Twitter or any blog, message board or other internet site or web log that in any way concerns or relates to the allegations in your Petition, your employment with PNC Bank, or the existence of this lawsuit, including in your answer the URL of the site to which the posting was made.

**ANSWER: None.**

21. Are you entitled to Medicare benefits under Part A (Hospital Insurance), Part B (Medical Insurance), Part C (Medicare Advantage Plan Coverage), or Part D (Prescription Drug Coverage)?

**ANSWER: No.**

22. Identify all documents you intend to introduce, or which you may introduce, into evidence at the trial of this matter.

**ANSWER: Objection. Attorney Work Product. This interrogatory necessarily relies upon an attorney's mental impressions, conclusions, opinions, and legal theories. It is also far too early for any such identification to occur. Plaintiff will fully comply with all pre-trial orders or agreements between the parties.**

23. Identify all documents you consulted or utilized to assist you in answering these Interrogatories.

Respectfully Submitted,

**CARTER LAW FIRM, LLC**

/s/ Jase Carter
Jase Carter, #63752
3407 S. Jefferson Ave., #109
St. Louis, MO 63118
Telephone:    (314) 675–1882
Email:           jase@carterfirm.law

*Attorney for Plaintiff Joseph Meehan*

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 18, 2018, the foregoing was emailed to the following:

**Andrew Cahill Johnson**
**Heather A. Pierce**
LITTLER MENDELSON, P.C.
One Metropolitan Square
211 North Broadway
Suite 1500
St. Louis, MO 63102
314-659-2000
Fax: 314-659-2099
Email: anjohnson@littler.com
Email: hpierce@littler.com

*Attorneys for Defendant*

/s/ Jase Carter
*Attorney for Plaintiff*

## VERIFICATION

I, Joseph Meehan, verify under oath and under penalty of perjury that the answers and information provided to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information, reasonable inquiry, and belief.

_____

Joseph Meehan, Plaintiff