# EXHIBIT D

# UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE

**2010-2011 EDITION**

2010-2011 USPAP

**PLUS**

## Guidance from the Appraisal Standards Board
+ USPAP ADVISORY OPINIONS
+ USPAP FREQUENTLY ASKED QUESTIONS (FAQ)

**Effective January 1, 2010 through December 31, 2011**

APPRAISAL STANDARDS BOARD

 THE APPRAISAL FOUNDATION
*Authorized by Congress as the Source of Appraisal Standards and Appraiser Qualifications*

Case: 4:17-cv-02876-PLC    Doc. #:  64-4    Filed: 03/20/19    Page: 3 of 55 PageID #: 865

# UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE

# 2010-2011 EDITION



APPRAISAL STANDARDS BOARD

THE APPRAISAL FOUNDATION
*Authorized by Congress as the Source of Appraisal Standards and Appraiser Qualifications*

Published in the United States of America.

ISBN: 978-0-9798728-3-9

All rights reserved.

No parts of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopy, recording or otherwise, without the prior written consent of the publisher.

## EFFECTIVE:

## January 1, 2010 through December 31, 2011

APPRAISAL STANDARDS BOARD

THE APPRAISAL FOUNDATION
*Authorized by Congress as the Source of Appraisal*
*Standards and Appraiser Qualifications*

## FOREWORD

The Appraisal Standards Board (ASB) of The Appraisal Foundation develops, interprets, and amends the *Uniform Standards of Professional Appraisal Practice* (USPAP) on behalf of appraisers and users of appraisal services. **The 2010-2011 Edition of USPAP (2010-2011 USPAP) is effective January 1, 2010 through December 31, 2011.**

USPAP has five sections: DEFINITIONS, PREAMBLE, Rules, Standards and Standards Rules, and Statements on Appraisal Standards. For convenience of reference, USPAP is published with this Foreword and a Table of Contents. These reference materials are forms of "Other Communications" provided by the ASB for guidance only and are not part of USPAP.

It is important that individuals understand and adhere to changes that are adopted in each edition of USPAP. State and federal regulatory authorities enforce the content of the current or applicable edition of USPAP.

### History of USPAP

These Standards are based on the original *Uniform Standards of Professional Appraisal Practice* developed in 1986–87 by the Ad Hoc Committee on Uniform Standards and copyrighted in 1987 by The Appraisal Foundation. The effective date of the original Uniform Standards was April 27, 1987. Prior to the establishment of the ASB in 1989, USPAP had been adopted by major appraisal organizations in North America. USPAP represents the generally accepted and recognized standards of appraisal practice in the United States.

At its organizational meeting on January 30, 1989, the Appraisal Standards Board unanimously approved and adopted the original USPAP as the initial appraisal standards promulgated by the ASB. Portions of USPAP may be amended, interpreted, supplemented, or retired by the ASB after exposure to the appraisal profession, users of appraisal services, and the public in accordance with established rules of procedure.

### Changes to USPAP

Over the years, USPAP has evolved in response to changes in appraisal practice. The ASB has developed a process for developing both Standards and guidance based, in part, on written comments submitted in response to exposure drafts and oral testimony presented at public meetings.

### Guidance

The ASB issues guidance in the form of Advisory Opinions, *USPAP Frequently Asked Questions* (FAQ) and monthly questions and responses "USPAP Q&A." These communications do not establish new Standards or interpret existing Standards and are not part of USPAP. They illustrate the applicability of Standards in specific situations and offer advice from the ASB for the resolution of specific appraisal issues and problems.

The USPAP Q&A is published monthly and available on The Appraisal Foundation website. These questions and responses are compiled and published in the *USPAP Frequently Asked Questions*.

### Contacting the Appraisal Standards Board

The ASB invites questions about USPAP, commentary on USPAP and proposed changes to USPAP from all interested parties, including appraisers, state enforcement agencies, users of appraisal services, and the public.

©The Appraisal Foundation                                                                                               U-i

**FOREWORD**

If you have any comments, questions, or suggestions regarding USPAP, please contact the ASB.

Appraisal Standards Board
The Appraisal Foundation
1155 15th Street, NW, Suite 1111
Washington, DC 20005
Phone: 202-347-7722
Fax: 202-347-7727
E-Mail: info@appraisalfoundation.org
www.appraisalfoundation.org

                              ©The Appraisal Foundation



APPRAISAL STANDARDS BOARD

THE APPRAISAL FOUNDATION

*Authorized by Congress as the Source of Appraisal*
*Standards and Appraiser Qualifications*

---

**2009 APPRAISAL STANDARDS BOARD MEMBERS**

---

Sandra Guilfoil – Chair

J. Carl Schultz, Jr. – Vice Chair

Richard L. Borges II

Jay E. Fishman

Richard Knitter

Barry J. Shea

(The 2010-2011 USPAP was adopted by the 2009 Appraisal Standards Board on April 3, 2009.)

---

**2008 APPRAISAL STANDARDS BOARD MEMBERS**

---

Sandra Guilfoil– Chair

Paula K. Konikoff – Vice Chair

Gregory J. Accetta

Richard L. Borges II

Richard Knitter

William Henry Riley III

©The Appraisal Foundation

**FOREWORD**

**Past Appraisal Standards Board Officers and Members**

*1989 Board Members*

Charles B. Akerson - Chair
John J. Leary - Vice Chair
Sherwood Darington
Daniel A. Dinote, Jr.
John L. Gadd

*1990 Board Members*

John J. Leary - Chair
Sherwood Darington - Vice Chair
Daniel A. Dinote, Jr.
John L. Gadd
Charles B. Akerson

*1991 Board Members*

John J. Leary - Chair
Sherwood Darington - Vice Chair
Daniel A. Dinote, Jr.
John L. Gadd
Charles B. Akerson

*1992 Board Members*

John J. Leary - Chair
Sherwood Darington - Vice Chair
Daniel A. Dinote, Jr.
John L. Gadd
Ritch LeGrand

*1993 Board Members*

Ritch LeGrand - Chair
Sherwood Darington - Vice Chair
Daniel A. Dinote, Jr.
John L. Gadd
John J. Leary

*1994 Board Members*

Sherwood Darington - Chair
Daniel A. Dinote, Jr. - Vice Chair
Tim Leberman
John J. Leary
Ritch LeGrand

*1995 Board Members*

Sherwood Darington - Chair
Tim Leberman - Vice Chair
Daniel A. Dinote, Jr.
W. David Snook
Laurie Van Court

*1996 Board Members*

W. David Snook - Chair
Laurie Van Court - Vice Chair
Stephanie Coleman
Tim Leberman

*1997 Board Members*

W. David Snook - Chair
Laurie Van Court - Vice Chair
Stephanie Coleman
Kenneth J. Kaiser
Tim Leberman

*1998 Board Members*

Tim Leberman - Chair
Kenneth J. Kaiser - Vice Chair
Stephanie Coleman
Yale Kramer
W. David Snook
Laurie Van Court

*1999 Board Members*

Kenneth J. Kaiser - Chair
Tim Leberman - Vice Chair
Yale Kramer
Lawrence E. Ofner
W. David Snook
Laurie Van Court

*2000 Board Members*

Kenneth J. Kaiser - Chair
Yale Kramer
Lawrence E. Ofner
W. David Snook
Richard A. Southern
Laurie Van Court
*No Vice Chair

*2001 Board Members*

Kenneth J. Kaiser - Chair
Richard A. Southern - Vice Chair
Thomas O. Jackson
Carla G. Glass
Lawrence E. Ofner
Danny K. Wiley

*2002 Board Members*

Danny K. Wiley - Chair
Lawrence E. Ofner - Vice Chair
Carla G. Glass
Thomas O. Jackson
Kenneth J. Kaiser
Richard A. Southern

*2003 Board Members*

Danny K. Wiley - Chair
Lawrence E. Ofner - Vice Chair
Gregory J. Accetta
Carla G. Glass
Paula K. Konikoff
Dawn M. Molitor-Gennrich

*2004 Board Members*

Danny K. Wiley – Chair
Carla G. Glass – Vice Chair
Gregory J. Accetta
Paula K. Konikoff
Dawn M. Molitor-Gennrich
Lawrence E. Ofner

*2005 Board Members*

Carla G. Glass – Chair
Gregory J. Accetta – Vice Chair
James D. Cannon
Paula K. Konikoff
Dawn M. Molitor-Gennrich
Danny K. Wiley

*2006 Board Members*

Gregory J. Accetta – Chair
Paula K. Konikoff – Vice Chair
James D. Cannon
Carla G. Glass
Dawn M. Molitor-Gennrich
William J. Pastuszek, Jr.
Danny K. Wiley

*2007 Board Members*

Gregory J. Accetta – Chair
Noreen Dornenburg – Vice Chair
Paula K. Konikoff
Dawn M. Molitor-Gennrich
William J. Pastuszek, Jr.
William Henry Riley

©The Appraisal Foundation

## REVISIONS TO USPAP AND USPAP ADVISORY OPINIONS

**Background**

On April 3, 2009, the Appraisal Standards Board (ASB) approved and adopted modifications to the 2008-09 edition of the *Uniform Standards of Professional Appraisal Practice* (USPAP). This action was the culmination of a 15-month joint ASB/AQB campaign that asked appraisers, users of appraisal services, regulators, educators, and others how well USPAP was serving their needs. This was accomplished with a series of public documents and public meetings. Written comments from almost 2,000 individuals, as well as oral comments offered at public meetings, were also received. The ASB considered every comment, developed a work plan to address the issues brought forward, and asked for and received public comment on a proposed work plan. This work plan included changes for the 2010-11 edition of USPAP, as well as additional changes (such as those involving the issue of reporting) for the 2012-13 edition of USPAP.

**2010-2011 Changes**

The changes to USPAP that were adopted by the ASB were the result of three exposure drafts, issued on October 3, 2008, December 10, 2008, and February 10, 2009. These changes have been incorporated into this 2010-2011 edition of USPAP and associated guidance material. The exposure drafts proposed changes to the following areas of USPAP:

- Definition of "Signature"
- Definition of "Jurisdictional Exception"
- Definition of "Assignment"
- The ETHICS RULE
- The COMPETENCY RULE
- The JURISDICTIONAL EXCEPTION RULE
- STANDARD 3, *Appraisal Review, Development and Reporting*

The Board received written comments from interested parties on all three exposure drafts and heard oral comments at public meetings held on November 18, 2008, February 23, 2009, and April 3, 2009.

The goal of the *Uniform Standards of Professional Appraisal Practice* is to promote and maintain a high level of public trust in appraisal practice by establishing requirements for appraisers. All potential changes and additions to USPAP are evaluated in light of this goal. The adopted changes are intended to improve the clarity, understanding and enforcement of USPAP, thereby furthering the goal of promoting and maintaining public trust in appraisal practice.

In reviewing comment letters received on the exposure drafts, the ASB's primary focus is the reasoning and insight presented in the letters, rather than the source or authorship. While a numerical count of comment letters may be taken, the ASB does not weigh the numerical count as a determining factor in its final decisions. The ASB is guided by the quality, relevancy, and accuracy of the points made, and not their frequency.

With the exception of minor administrative edits, the Board adopted the proposed revisions to USPAP as contained in the Third Exposure Draft.

Most of the changes to the 2010-2011 USPAP were done for clarity and do not alter the intent or general requirements. The changes that do impact requirements include the following:

©The Appraisal Foundation

**FOREWORD**

---

| The ETHICS RULE |
| --- |

<u>Conduct</u> **Section**

Prior to accepting an assignment, and if discovered at any time during the assignment, an appraiser must disclose to the client and in the report certification:

- any services regarding the subject property performed by the appraiser within the prior three years, as an appraiser or in any other capacity.

This disclosure requirement will allow a prospective client to know, at the time of the assignment, whether the appraiser is performing, or has performed, other services with regard to the property, such as property management, leasing, brokerage, auction, or investment advisory services, etc., thus allowing the client to determine potential conflicts, if any.

Whether for potential or perceived conflicts of interest, disclosure prior to accepting an assignment is important to preserving public trust. The client should have an opportunity to evaluate this information *before* the appraiser is engaged, or if such potential or perceived conflict of interest is discovered by the appraiser during the assignment. The appraiser must avoid bias – a preference or inclination that may preclude his or her impartiality, independence, or objectivity in the assignment. The perception of possible bias is also potentially damaging to public trust in the appraisal profession. Therefore, appraisers should have an obligation to disclose an interest and potential conflict to the client prior to being engaged in an assignment, or if it is discovered by the appraiser during the assignment.

<u>Record Keeping</u> **Section**

The Board deleted an appraiser's obligation to allow the client access to the workfile for a Restricted Use Appraisal Report. The requirement that all appraisal reports contain sufficient information to enable the intended users of the appraisal to understand the report properly made this ETHICS RULE statement unnecessary. Conforming edits to SR 2-2(c)(viii), SR 8-2(c)(viii) and SR 10-2(b)(ix) were also made.

---

| STANDARD 3, *Appraisal Review, Development and Reporting* |
| --- |

STANDARD 3 has been rewritten significantly. The ASB's intent was to update and clarify the requirements for appraisal review, not to introduce changes to current appraisal review practice or create new appraisal review requirements.

An examination of the requirements for appraisal review revealed that although the Standard addresses the requirements for both development and reporting, the requirements are often not distinct or fully elaborated. Therefore, revisions were made to expand and distinguish the development and reporting requirements. STANDARD 3 was divided into two sections: one addressing development, and one addressing reporting. The revised language mirrors the form and content of the other STANDARDS.

A review of the other Standards revealed that they all include a basic format of general requirements followed by specific requirements. For example, Standards Rule 1-1 provides for the basic requirements of appraisal development, followed by the requirements of problem identification in Standards Rule 1-2. The remaining Standards Rules present more specific requirements. However, STANDARD 3 did not follow this format, which complicated understanding, application, education, and enforcement. Therefore, revisions were made to create a more logical and comprehensive structure.

The requirements of Standards Rules 3-1(d) through (g) present the requirements related to the process of appraisal review. The considerations previously required (completeness, adequacy, relevance, appropriateness, and reasonableness) failed to reflect the true nature of current practice and were somewhat repetitive. The

---

U-vi                                                                                    ©The Appraisal Foundation

Case: 4:17-cv-02876-PLC    Doc. #:  64-4    Filed: 03/20/19    Page: 10 of 55 PageID #: 872

reviewer's scope of work can include much less than and much more than these considerations.  Further, there was no distinction of the difference between reviewing an analysis (development) and reviewing a report.  The revisions made are intended to better guide a review process that is in practice quite broad and flexible.

A common area of misunderstanding in STANDARD 3 related to the requirements that apply to reviewers who are providing their own opinion(s) related to the subject of an appraisal, an appraisal review, or an appraisal consulting problem addressed in the work under review.  In the review of an appraisal assignment, the reviewer can provide an opinion of value for the property that is the subject of the appraisal review assignment.  In the review of an appraisal review assignment, the reviewer can provide an opinion of quality for the work that is the subject of the appraisal review assignment.  In the review of an appraisal consulting assignment, the reviewer can provide an analysis, recommendation, or opinion for the consulting problem that is the subject of the appraisal consulting assignment.  Revisions were made to organize and clarify the requirements that apply to a reviewer providing their own opinion of value, review opinion, or consulting conclusion related to the work that is the subject of the appraisal review assignment.

Administrative edits were also made to USPAP and all guidance material, including the *USPAP Advisory Opinions* and *USPAP Frequently Asked Questions*, for conformity and consistency.

**FOREWORD**

**TABLE OF CONTENTS**

**UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE**

DEFINITIONS ....................................................................................................U-1
PREAMBLE.......................................................................................................U-6
ETHICS RULE...................................................................................................U-7
COMPETENCY RULE.......................................................................................U-11
SCOPE OF WORK RULE..................................................................................U-13
JURISDICTIONAL EXCEPTION RULE .............................................................U-15

**Standards and Standards Rules**

STANDARD 1: REAL PROPERTY APPRAISAL, DEVELOPMENT....................................U-16
STANDARD 2: REAL PROPERTY APPRAISAL, REPORTING.......................................U-21
STANDARD 3: APPRAISAL REVIEW, DEVELOPMENT AND REPORTING ...............U-30
STANDARD 4: REAL PROPERTY APPRAISAL CONSULTING, DEVELOPMENT .......U-38
STANDARD 5:  REAL PROPERTY APPRAISAL CONSULTING, REPORTING ...........U-41
STANDARD 6:  MASS APPRAISAL, DEVELOPMENT AND REPORTING..................U-45
STANDARD 7: PERSONAL PROPERTY APPRAISAL, DEVELOPMENT ....................U-56
STANDARD 8: PERSONAL PROPERTY APPRAISAL, REPORTING ..........................U-61
STANDARD 9: BUSINESS APPRAISAL, DEVELOPMENT ...........................................U-70
STANDARD 10: BUSINESS APPRAISAL REPORTING.................................................U-74

**Statements on Appraisal Standards**

Statements on Appraisal Standards (SMT) are authorized by the by-laws of The Appraisal Foundation and are specifically for the purposes of clarification, interpretation, explanation, or elaboration of the *Uniform Standards of Professional Appraisal Practice* (USPAP). Statements have the full weight of a Standards Rule and can be adopted by the Appraisal Standards Board only after exposure and comment.

Each Statement is labeled as to its applicability to the various appraisal disciplines. The abbreviations are:

- Real Property – RP
- Personal Property – PP
- Intangible Property – IP (includes business interests)
- All disciplines – ALL

SMT-1  Appraisal Review—Clarification of Comment on Standards Rule 3-1(g) - Retired ..................U-80
SMT-2  Discounted Cash Flow Analysis (RP).......................................................................U-81
SMT-3  Retrospective Value Opinions (RP, PP).................................................................U-84
SMT-4  Prospective Value Opinions (RP, PP) ....................................................................U-86
SMT-5  Confidentiality Section of the ETHICS RULE - Retired .........................................U-88
SMT-6  Reasonable Exposure Time in Real Property and Personal Property Market
       Value Opinions (RP, PP)........................................................................................U-89
SMT-7  Permitted Departure from Specific Requirements in Real Property and Personal Property
       Appraisal Assignments - Retired...........................................................................U-91
SMT-8  Electronic Transmission of Reports - Retired .........................................................U-92
SMT-9  Identification of Intended Use and Intended Users (ALL)......................................U-93
SMT-10 Assignments for Use by a Federally Insured Depository Institution in a Federally
       Related Transaction - Retired................................................................................U-97

©The Appraisal Foundation

# UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE

**as promulgated by the**
**Appraisal Standards Board of**
**The Appraisal Foundation**

## DEFINITIONS

For the purpose of the *Uniform Standards of Professional Appraisal Practice* (USPAP), the following definitions apply:

**APPRAISAL:** (noun) the act or process of developing an opinion of value; an opinion of value.
(adjective) of or pertaining to appraising and related functions such as appraisal practice or appraisal services.

> Comment: An appraisal must be numerically expressed as a specific amount, as a range of numbers, or as a relationship (e.g., not more than, not less than) to a previous value opinion or numerical benchmark (e.g., assessed value, collateral value).

**APPRAISAL CONSULTING:** the act or process of developing an analysis, recommendation, or opinion to solve a problem, where an opinion of value is a component of the analysis leading to the assignment results.

> Comment: An appraisal consulting assignment involves an opinion of value but does not have an appraisal or an appraisal review as its primary purpose.

**APPRAISAL PRACTICE:** valuation services performed by an individual acting as an appraiser, including but not limited to appraisal, appraisal review, or appraisal consulting.

> Comment: *Appraisal practice* is provided only by appraisers, while *valuation services* are provided by a variety of professionals and others. The terms *appraisal*, *appraisal review*, and *appraisal consulting* are intentionally generic and are not mutually exclusive. For example, an opinion of value may be required as part of an appraisal review and is required as a component of the analysis in an appraisal consulting assignment. The use of other nomenclature for an appraisal, appraisal review, or appraisal consulting assignment (e.g., analysis, counseling, evaluation, study, submission, or valuation) does not exempt an appraiser from adherence to the *Uniform Standards of Professional Appraisal Practice*.

**APPRAISAL REVIEW:** the act or process of developing and communicating an opinion about the quality of another appraiser's work that was performed as part of an appraisal, appraisal review, or appraisal consulting assignment.

> Comment: The subject of an appraisal review assignment may be all or part of a report, workfile, or a combination of these.

**APPRAISER:** one who is expected to perform valuation services competently and in a manner that is independent, impartial, and objective.

## DEFINITIONS

> Comment: Such expectation occurs when individuals, either by choice or by requirement placed upon them or upon the service they provide by law, regulation, or agreement with the client or intended users, represent that they comply.[1]

**APPRAISER'S PEERS:** other appraisers who have expertise and competency in a similar type of assignment.

**ASSIGNMENT:** 1) An agreement between an appraiser and a client to provide a valuation service; 2) the valuation service that is provided as a consequence of such an agreement.

**ASSIGNMENT RESULTS:** an appraiser's opinions and conclusions developed specific to an assignment.

> Comment: Assignment results include an appraiser's:

- opinions or conclusions developed in an appraisal assignment, such as value;
- opinions of adequacy, relevancy, or reasonableness developed in an appraisal review assignment; or
- opinions, conclusions, or recommendations developed in an appraisal consulting assignment.

**ASSUMPTION:** that which is taken to be true.

**BIAS:** a preference or inclination that precludes an appraiser's impartiality, independence, or objectivity in an assignment.

**BUSINESS ENTERPRISE:** an entity pursuing an economic activity.

**BUSINESS EQUITY:** the interests, benefits, and rights inherent in the ownership of a business enterprise or a part thereof in any form (including, but not necessarily limited to, capital stock, partnership interests, cooperatives, sole proprietorships, options, and warrants).

**CLIENT:** the party or parties who engage an appraiser (by employment or contract) in a specific assignment.

> Comment: The client identified by the appraiser in an appraisal, appraisal review, or appraisal consulting assignment (or in the assignment workfile) is the party or parties with whom the appraiser has an appraiser-client relationship in the related assignment, and may be an individual, group, or entity.

**CONFIDENTIAL INFORMATION:**  information that is either:

- identified by the client as confidential when providing it to an appraiser and that is not available from any other source; or
- classified as confidential or private by applicable law or regulation*.

*NOTICE: For example, pursuant to the passage of the Gramm-Leach-Bliley Act in November 1999, some public agencies have adopted privacy regulations that affect appraisers. As a result, the Federal Trade Commission issued a rule focused on the protection of "non-public personal information" provided by consumers to those involved in financial activities "found to be closely related to banking or usual in connection with the transaction of banking." These activities have been deemed to include "appraising real or personal property." (Quotations are from the Federal Trade Commission, Privacy of Consumer Financial Information; Final Rule, 16 CFR Part 313.)

---

[1] See PREAMBLE and Advisory Opinion 21, *USPAP Compliance*.

USPAP 2010-2011 Edition
©The Appraisal Foundation

**DEFINITIONS**

**COST:** the amount required to create, produce, or obtain a property.

> Comment: *Cost* is either a fact or an estimate of fact.

**CREDIBLE:** worthy of belief.

> Comment:  Credible assignment results require support, by relevant evidence and logic, to the degree necessary for the intended use.

**EXTRAORDINARY ASSUMPTION:** an assumption, directly related to a specific assignment, which, if found to be false, could alter the appraiser's opinions or conclusions.

> Comment: Extraordinary assumptions presume as fact otherwise uncertain information about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis.

**FEASIBILITY ANALYSIS:** a study of the cost-benefit relationship of an economic endeavor.

**HYPOTHETICAL CONDITION:** that which is contrary to what exists but is supposed for the purpose of analysis.

> Comment: Hypothetical conditions assume conditions contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis.

**INTANGIBLE PROPERTY (INTANGIBLE ASSETS):** nonphysical assets, including but not limited to franchises, trademarks, patents, copyrights, goodwill, equities, securities, and contracts as distinguished from physical assets such as facilities and equipment.

**INTENDED USE:** the use or uses of an appraiser's reported appraisal, appraisal review, or appraisal consulting assignment opinions and conclusions, as identified by the appraiser based on communication with the client at the time of the assignment.

**INTENDED USER:** the client and any other party as identified, by name or type, as users of the appraisal, appraisal review, or appraisal consulting report by the appraiser on the basis of communication with the client at the time of the assignment.

**JURISDICTIONAL EXCEPTION:** an assignment condition established by applicable law or regulation, which precludes an appraiser from complying with a part of USPAP.

**MARKET VALUE:** a type of value, stated as an opinion, that presumes the transfer of a property (i.e., a right of ownership or a bundle of such rights), as of a certain date, under specific conditions set forth in the definition of the term identified by the appraiser as applicable in an appraisal.

> Comment: Forming an opinion of market value is the purpose of many real property appraisal assignments, particularly when the client's intended use includes more than one intended user. The conditions included in market value definitions establish market perspectives for development of the opinion. These conditions may vary from definition to definition but generally fall into three categories:
> 1.      the relationship, knowledge, and motivation of the parties (i.e., seller and buyer);
> 2.      the terms of sale (e.g., cash, cash equivalent, or other terms); and

## DEFINITIONS

3.  the conditions of sale (e.g., exposure in a competitive market for a reasonable time prior to sale).

***Appraisers are cautioned to identify the exact definition of market value, and its authority, applicable in each appraisal completed for the purpose of market value.***

**MASS APPRAISAL:** the process of valuing a universe of properties as of a given date using standard methodology, employing common data, and allowing for statistical testing.

**MASS APPRAISAL MODEL:** a mathematical expression of how supply and demand factors interact in a market.

**PERSONAL PROPERTY:** identifiable tangible objects that are considered by the general public as being "personal" - for example, furnishings, artwork, antiques, gems and jewelry, collectibles, machinery and equipment; all tangible property that is not classified as real estate.

**PRICE:** the amount asked, offered, or paid for a property.

Comment: Once stated, *price* is a fact, whether it is publicly disclosed or retained in private. Because of the financial capabilities, motivations, or special interests of a given buyer or seller, the price paid for a property may or may not have any relation to the *value* that might be ascribed to that property by others.

**REAL ESTATE:** an identified parcel or tract of land, including improvements, if any.

**REAL PROPERTY:** the interests, benefits, and rights inherent in the ownership of real estate.

Comment: In some jurisdictions, the terms *real estate* and *real property* have the same legal meaning. The separate definitions recognize the traditional distinction between the two concepts in appraisal theory.

**REPORT:** any communication, written or oral, of an appraisal, appraisal review, or appraisal consulting service that is transmitted to the client upon completion of an assignment

Comment: Most reports are written and most clients mandate written reports. Oral report requirements (see the Record Keeping section of the ETHICS RULE) are included to cover court testimony and other oral communications of an appraisal, appraisal review, or appraisal consulting service.

**SCOPE OF WORK:** the type and extent of research and analyses in an assignment.

**SIGNATURE:** personalized evidence indicating authentication of the work performed by the appraiser and the acceptance of the responsibility for content, analyses, and the conclusions in the report.

**VALUATION SERVICES:** services pertaining to aspects of property value.

Comment: Valuation services pertain to all aspects of property value and include services performed both by appraisers and by others.

**VALUE:** the monetary relationship between properties and those who buy, sell, or use those properties.

Comment: *Value* expresses an economic concept. As such, it is never a fact but always an opinion of the worth of a property at a given time in accordance with a specific definition of

value. In appraisal practice, value must always be qualified - for example, market value, liquidation value, or investment value.

**WORKFILE:** documentation necessary to support an appraiser's analyses, opinions, and conclusions.

**PREAMBLE**

The purpose of the *Uniform Standards of Professional Appraisal Practice* (USPAP) is to promote and maintain a high level of public trust in appraisal practice by establishing requirements for appraisers. It is essential that appraisers develop and communicate their analyses, opinions, and conclusions to intended users of their services in a manner that is meaningful and not misleading.

The Appraisal Standards Board promulgates USPAP for both appraisers and users of appraisal services. The appraiser's responsibility is to protect the overall public trust and it is the importance of the role of the appraiser that places ethical obligations on those who serve in this capacity. USPAP reflects the current standards of the appraisal profession.

USPAP does not establish who or which assignments must comply. Neither The Appraisal Foundation nor its Appraisal Standards Board is a government entity with the power to make, judge, or enforce law. Compliance with USPAP is required when either the service or the appraiser is obligated to comply by law or regulation, or by agreement with the client or intended users. When not obligated, individuals may still choose to comply.

USPAP addresses the ethical and performance obligations of appraisers through DEFINITIONS, Rules, Standards, Standards Rules, and Statements.

- The DEFINITIONS establish the application of certain terminology in USPAP.
- The ETHICS RULE sets forth the requirements for integrity, impartiality, objectivity, independent judgment, and ethical conduct.
- The COMPETENCY RULE presents pre-assignment and assignment conditions for knowledge and experience.
- The SCOPE OF WORK RULE presents obligations related to problem identification, research and analyses.
- The JURISDICTIONAL EXCEPTION RULE preserves the balance of USPAP if law or regulation of a jurisdiction precludes compliance with any part of USPAP.
- The ten Standards establish the requirements for appraisal, appraisal review, and appraisal consulting service and the manner in which each is communicated.
  - STANDARDS 1 and 2 establish requirements for the development and communication of a real property appraisal.
  - STANDARD 3 establishes requirements for the development and communication of an appraisal review.
  - STANDARDS 4 and 5 establish requirements for the development and communication of a real property appraisal consulting assignment.
  - STANDARD 6 establishes requirements for the development and communication of a mass appraisal.
  - STANDARDS 7 and 8 establish requirements for the development and communication of a personal property appraisal.
  - STANDARDS 9 and 10 establish requirements for the development and communication of a business or intangible asset appraisal.
- Statements on Appraisal Standards clarify, interpret, explain, or elaborate on a Rule or Standards Rule.
- Comments are an integral part of USPAP and have the same weight as the component they address. These extensions of the DEFINITIONS, Rules, and Standards Rules provide interpretation and establish the context and conditions for application.

**ETHICS RULE**

**An appraiser must promote and preserve the public trust inherent in appraisal practice by observing the highest standards of professional ethics.**

**An appraiser must comply with USPAP when obligated by law or regulation, or by agreement with the client or intended users. In addition to these requirements, an individual should comply any time that individual represents that he or she is performing the service as an appraiser.**

> Comment: This Rule specifies the personal obligations and responsibilities of the individual appraiser. An individual appraiser employed by a group or organization that conducts itself in a manner that does not conform to USPAP should take steps that are appropriate under the circumstances to ensure compliance with USPAP.

> This ETHICS RULE is divided into four sections: Conduct, Management, Confidentiality, and Record Keeping. The Conduct, Management, and Confidentiality sections apply to all appraisal practice. The Record Keeping section applies to appraisal practice performed under STANDARDS 1 through 10.

**Conduct:**

**An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests.**

**An appraiser:**

- **must not perform an assignment with bias;**

- **must not advocate the cause or interest of any party or issue;**

- **must not accept an assignment that includes the reporting of predetermined opinions and conclusions;**

- **must not misrepresent his or her role when providing valuation services that are outside of appraisal practice;**

- **must not communicate assignment results with the intent to mislead or to defraud;**

- **must not use or communicate a report that is known by the appraiser to be misleading or fraudulent;**

- **must not knowingly permit an employee or other person to communicate a misleading or fraudulent report;**

- **must not use or rely on unsupported conclusions relating to characteristics such as race, color, religion, national origin, gender, marital status, familial status, age, receipt of public assistance income, handicap, or an unsupported conclusion that homogeneity of such characteristics is necessary to maximize value;**

- **must not engage in criminal conduct; and**

- **must not perform an assignment in a grossly negligent manner.**

> Comment: Development standards (1-1, 3-1, 4-1, 6-1, 7-1 and 9-1) address the requirement that "an appraiser must not render appraisal services in a careless or negligent manner." The above requirement deals with an appraiser being grossly negligent in performing an assignment which would be a violation of the Conduct section of the ETHICS RULE.

## ETHICS RULE

**If known prior to accepting an assignment, and/or if discovered at any time during the assignment, an appraiser must disclose to the client, and in the subsequent report certification:**

- **any current or prospective interest in the subject property or parties involved; and**

- **any services regarding the subject property performed by the appraiser within the three year period immediately preceding acceptance of the assignment, as an appraiser or in any other capacity.**

> Comment: Disclosing the fact that the appraiser has previously appraised the property is permitted except in the case when an appraiser has agreed with the client to keep the mere occurrence of a prior assignment confidential.  If an appraiser has agreed with a client not to disclose that he or she has appraised a property, the appraiser must decline all subsequent assignments that fall within the three year period.

**Management:**

**An appraiser must disclose that he or she paid a fee or commission, or gave a thing of value in connection with the procurement of an assignment.**

> Comment: The disclosure must appear in the certification and in any transmittal letter in which conclusions are stated; however, disclosure of the amount paid is not required.  In groups or organizations engaged in appraisal practice, intra-company payments to employees for business development do not require disclosure.

**An appraiser must not accept an assignment, or have a compensation arrangement for an assignment, that is contingent on any of the following:**

1. **the reporting of a predetermined result (e.g., opinion of value);**

2. **a direction in assignment results that favors the cause of the client;**

3. **the amount of a value opinion;**

4. **the attainment of a stipulated result (e.g., that the loan closes, or taxes are reduced); or**

5. **the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.**

**An appraiser must not advertise for or solicit assignments in a manner that is false, misleading, or exaggerated.**

**An appraiser must affix, or authorize the use of, his or her signature to certify recognition and acceptance of his or her USPAP responsibilities in an appraisal, appraisal review, or appraisal consulting assignment (see Standards Rules 2-3, 3-6, 5-3, 6-9, 8-3, and 10-3).  An appraiser may authorize the use of his or her signature only on an assignment-by-assignment basis.**

**An appraiser must not affix the signature of another appraiser without his or her consent.**

> Comment: An appraiser must exercise due care to prevent unauthorized use of his or her signature. An appraiser exercising such care is not responsible for unauthorized use of his or her signature.

**Confidentiality:**

**An appraiser must protect the confidential nature of the appraiser-client relationship.**

**An appraiser must act in good faith with regard to the legitimate interests of the client in the use of confidential information and in the communication of assignment results.**

U-8

**An appraiser must be aware of, and comply with, all confidentiality and privacy laws and regulations applicable in an assignment.[2]**

**An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:**

- **the client;**

- **persons specifically authorized by the client;**

- **state appraiser regulatory agencies;**

- **third parties as may be authorized by due process of law; or**

- **a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.**

**A member of a duly authorized professional peer review committee must not disclose confidential information presented to the committee.**

> Comment: When all confidential elements of confidential information and assignment results are removed through redaction or the process of aggregation, client authorization is not required for the disclosure of the remaining information, as modified.

**Record Keeping:**

**An appraiser must prepare a workfile for each appraisal, appraisal review, or appraisal consulting assignment. A workfile must be in existence prior to the issuance of a written or oral report. A written summary of an oral report must be added to the workfile within a reasonable time after the issuance of the oral report.**

**The workfile must include:**

- **the name of the client and the identity, by name or type, of any other intended users;**

- **true copies of any written reports, documented on any type of media (A true copy is a replica of the report transmitted to the client. A photocopy or an electronic copy of the entire signed report transmitted to the client satisfies the requirement of a true copy.);**

- **summaries of any oral reports or testimony, or a transcript of testimony, including the appraiser's signed and dated certification; and**

- **all other data, information, and documentation necessary to support the appraiser's opinions and conclusions and to show compliance with USPAP, or references to the location(s) of such other documentation.**

---

[2] Pursuant to the passage of the Gramm-Leach-Bliley Act in 1999, numerous agencies have adopted privacy regulations. Such regulations are focused on the protection of information provided by consumers to those involved in financial activities "found to be closely related to banking or usual in connection with the transaction of banking." These activities have been deemed to include "appraising real or personal property." (Quotations are from the Federal Trade Commission, Privacy of Consumer Financial Information; Final Rule, 16 CFR Part 313.)

ETHICS RULE

---

**An appraiser must retain the workfile for a period of at least five years after preparation or at least two years after final disposition of any judicial proceeding in which the appraiser provided testimony related to the assignment, whichever period expires last.**

**An appraiser must have custody of his or her workfile, or make appropriate workfile retention, access, and retrieval arrangements with the party having custody of the workfile.**

**An appraiser having custody of a workfile must allow other appraisers with workfile obligations related to an assignment appropriate access and retrieval for the purpose of:**

- **submission to state appraiser regulatory agencies;**

- **compliance with due process of law;**

- **submission to a duly authorized professional peer review committee; or**

- **compliance with retrieval arrangements.**

   Comment: Care should be exercised in the selection of the form, style, and type of medium for records to ensure that they are retrievable by the appraiser throughout the prescribed record retention period.

   A workfile must be made available by the appraiser when required by a state appraiser regulatory agency or due process of law.

   A workfile in support of a Restricted Use Appraisal Report must be sufficient for the appraiser to produce a Summary Appraisal Report (for assignments under STANDARDS 2 and 8) or an Appraisal Report (for assignments under STANDARD 10).

**COMPETENCY RULE**

**An appraiser must: (1) be competent to perform the assignment; (2) acquire the necessary competency to perform the assignment; or (3) decline or withdraw from the assignment.**

<u>**Being Competent**</u>

**The appraiser must determine, prior to accepting an assignment, that he or she can perform the assignment competently.  Competency requires:**

1. **the ability to properly identify the problem to be addressed; and**

2. **the knowledge and experience to complete the assignment competently; and**

3. **recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.**

> <u>Comment</u>: Competency may apply to factors such as, but not limited to, an appraiser's familiarity with a specific type of property or asset, a market, a geographic area, an intended use, specific laws and regulations, or an analytical method.  If such a factor is necessary for an appraiser to develop credible assignment results, the appraiser is responsible for having the competency to address that factor or for following the steps outlined below to satisfy this COMPETENCY RULE.

> For assignments with retrospective opinions and conclusions, the appraiser must meet the requirements of this COMPETENCY RULE at the time of the assignment, rather than the effective date.

<u>**Acquiring Competency**</u>

**If an appraiser determines he or she is not competent prior to accepting an assignment, the appraiser must:**

1. **disclose the lack of knowledge and/or experience to the client before accepting the assignment;**

2. **take all steps necessary or appropriate to complete the assignment competently; and**

3. **describe, in the report, the lack of knowledge and/or experience and the steps taken to complete the assignment competently.**

> <u>Comment</u>: Competency can be acquired in various ways, including, but not limited to, personal study by the appraiser, association with an appraiser reasonably believed to have the necessary knowledge and/or experience, or retention of others who possess the necessary knowledge and/or experience.

> In an assignment where geographic competency is necessary, an appraiser who is not familiar with the relevant market characteristics must acquire an understanding necessary to produce credible assignment results for the specific property type and market involved.

**When facts or conditions are discovered during the course of an assignment that cause an appraiser to determine, at that time, that he or she lacks the required knowledge and experience to complete the assignment competently, the appraiser must:**

1. **notify the client, and**

2. **take all steps necessary or appropriate to complete the assignment competently, and**

**COMPETENCY RULE**

3.  describe, in the report, the lack of knowledge and/or experience and the steps taken to complete the assignment competently.

**Lack of Competency**

If the assignment cannot be completed competently the appraiser must decline or withdraw from the assignment.

U-12

**SCOPE OF WORK RULE[3]**

**For each appraisal, appraisal review, and appraisal consulting assignment, an appraiser must:**

    1.   **identify the problem to be solved;**

    2.   **determine and perform the scope of work necessary to develop credible assignment results; and**

    3.   **disclose the scope of work in the report.**

**An appraiser must properly identify the problem to be solved in order to determine the appropriate scope of work. The appraiser must be prepared to demonstrate that the scope of work is sufficient to produce credible assignment results.**

> <u>Comment</u>: Scope of work includes, but is not limited to:
>
> - the extent to which the property is identified;
> - the extent to which tangible property is inspected;
> - the type and extent of data researched; and
> - the type and extent of analyses applied to arrive at opinions or conclusions.
>
> Appraisers have broad flexibility and significant responsibility in determining the appropriate scope of work for an appraisal, appraisal review, and appraisal consulting assignment.
>
> Credible assignment results require support by relevant evidence and logic. The credibility of assignment results is always measured in the context of the intended use.

**Problem Identification**

**An appraiser must gather and analyze information about those assignment elements that are necessary to properly identify the appraisal, appraisal review or appraisal consulting problem to be solved.**

> <u>Comment</u>: The assignment elements necessary for problem identification are addressed in the applicable Standards Rules (i.e., SR 1-2, SR 3-1, SR 4-2, SR 6-2, SR 7-2 and SR 9-2). In an appraisal assignment, for example, identification of the problem to be solved requires the appraiser to identify the following assignment elements:
>
> - client and any other intended users;
> - intended use of the appraiser's opinions and conclusions;
> - type and definition of value;
> - effective date of the appraiser's opinions and conclusions;
> - subject of the assignment and its relevant characteristics; and
> - assignment conditions.
>
> This information provides the appraiser with the basis for determining the type and extent of research and analyses to include in the development of an appraisal. Similar information is necessary for problem identification in appraisal review and appraisal consulting assignments.
>
> Communication with the client is required to establish most of the information necessary for problem identification. However, the identification of relevant characteristics is a judgment made by the appraiser that requires competency in that type of assignment.

---

[3] See Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure* and Advisory Opinion 29, *An Acceptable Scope of Work*.

**SCOPE OF WORK RULE**

Assignment conditions include assumptions, extraordinary assumptions, hypothetical conditions, laws and regulations, jurisdictional exceptions, and other conditions that affect the scope of work.  Laws include constitutions, legislative and court-made law, administrative rules, and ordinances. Regulations include rules or orders, having legal force, issued by an administrative agency.

**Scope of Work Acceptability**[4]

**The scope of work must include the research and analyses that are necessary to develop credible assignment results.**

> Comment: The scope of work is acceptable when it meets or exceeds:

- the expectations of parties who are regularly intended users for similar assignments; and

- what an appraiser's peers' actions would be in performing the same or a similar assignment.

> Determining the scope of work is an ongoing process in an assignment. Information or conditions discovered during the course of an assignment might cause the appraiser to reconsider the scope of work.

> An appraiser must be prepared to support the decision to exclude any investigation, information, method, or technique that would appear relevant to the client, another intended user, or the appraiser's peers.

**An appraiser must not allow assignment conditions to limit the scope of work to such a degree that the assignment results are not credible in the context of the intended use.**

> Comment: If relevant information is not available because of assignment conditions that limit research opportunities (such as conditions that place limitations on inspection or information gathering), an appraiser must withdraw from the assignment unless the appraiser can:

- modify the assignment conditions to expand the scope of work to include gathering the information; or

- use an extraordinary assumption about such information, if credible assignment results can still be developed.

**An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.**

**Disclosure Obligations**

**The report must contain sufficient information to allow intended users to understand the scope of work performed.**

> Comment: Proper disclosure is required because clients and other intended users rely on the assignment results. Sufficient information includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

---

[4] See Advisory Opinion 29, *An Acceptable Scope of Work*.

**JURISDICTIONAL EXCEPTION RULE**

**If any applicable law or regulation precludes compliance with any part of USPAP, only that part of USPAP becomes void for that assignment.**

> Comment: When compliance with USPAP is required by federal law or regulation, no part of USPAP can be voided by a law or regulation of a state or local jurisdiction.

**In an assignment involving a jurisdictional exception, an appraiser must:**

1. **identify the law or regulation that precludes compliance with USPAP;**

2. **comply with that law or regulation;**

3. **clearly and conspicuously disclose in the report the part of USPAP that is voided by that law or regulation; and**

4. **cite in the report the law or regulation requiring this exception to USPAP compliance.**

Comment: The JURISDICTIONAL EXCEPTION RULE provides a saving or severability clause intended to preserve the balance of USPAP if compliance with one or more of its parts is precluded by the law or regulation of a jurisdiction. When an appraiser properly follows this Rule in disregarding a part of USPAP, there is no violation of USPAP.

Law includes constitutions, legislative and court-made law, and administrative rules and ordinances. Regulations include rules or orders having legal force, issued by an administrative agency. Instructions from a client or attorney do not establish a jurisdictional exception.

STANDARD 1: REAL PROPERTY APPRAISAL, DEVELOPMENT

**In developing a real property appraisal, an appraiser must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible appraisal.**

> Comment: STANDARD 1 is directed toward the substantive aspects of developing a credible appraisal of real property. The requirements set forth in STANDARD 1 follow the appraisal development process in the order of topics addressed and can be used by appraisers and the users of appraisal services as a convenient checklist.

**Standards Rule 1-1**

**In developing a real property appraisal, an appraiser must:**

**(a)    be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal;**

> Comment: This Standards Rule recognizes that the principle of change continues to affect the manner in which appraisers perform appraisal services. Changes and developments in the real estate field have a substantial impact on the appraisal profession. Important changes in the cost and manner of constructing and marketing commercial, industrial, and residential real estate as well as changes in the legal framework in which real property rights and interests are created, conveyed, and mortgaged have resulted in corresponding changes in appraisal theory and practice. Social change has also had an effect on appraisal theory and practice. To keep abreast of these changes and developments, the appraisal profession is constantly reviewing and revising appraisal methods and techniques and devising new methods and techniques to meet new circumstances. For this reason, it is not sufficient for appraisers to simply maintain the skills and the knowledge they possess when they become appraisers. Each appraiser must continuously improve his or her skills to remain proficient in real property appraisal.

**(b)    not commit a substantial error of omission or commission that significantly affects an appraisal; and**

> Comment: An appraiser must use sufficient care to avoid errors that would significantly affect his or her opinions and conclusions. Diligence is required to identify and analyze the factors, conditions, data, and other information that would have a significant effect on the credibility of the assignment results.

**(c)    not render appraisal services in a careless or negligent manner, such as by making a series of errors that, although individually might not significantly affect the results of an appraisal, in the aggregate affects the credibility of those results.**

> Comment: Perfection is impossible to attain, and competence does not require perfection. However, an appraiser must not render appraisal services in a careless or negligent manner. This Standards Rule requires an appraiser to use due diligence and due care.

**Standards Rule 1-2**

**In developing a real property appraisal, an appraiser must:**

(a)    identify the client and other intended users;[5]

(b)    identify the intended use of the appraiser's opinions and conclusions;[6]

Comment: An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.[7]

(c)    identify the type and definition of value, and, if the value opinion to be developed is market value, ascertain whether the value is to be the most probable price:

(i)    in terms of cash; or

(ii)    in terms of financial arrangements equivalent to cash; or

(iii)    in other precisely defined terms; and

(iv)    if the opinion of value is to be based on non-market financing or financing with unusual conditions or incentives, the terms of such financing must be clearly identified and the appraiser's opinion of their contributions to or negative influence on value must be developed by analysis of relevant market data;

Comment: When developing an opinion of market value, the appraiser must also develop an opinion of reasonable exposure time linked to the value opinion.[8]

(d)    identify the effective date of the appraiser's opinions and conclusions;[9]

(e)    identify the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal,[10] including:

(i)    its location and physical, legal, and economic attributes;

(ii)    the real property interest to be valued;

(iii)    any personal property, trade fixtures, or intangible items that are not real property but are included in the appraisal;

(iv)    any known easements, restrictions, encumbrances, leases, reservations, covenants, contracts, declarations, special assessments, ordinances, or other items of a similar nature; and

(v)    whether the subject property is a fractional interest, physical segment, or partial holding;

---

[5]  See Statement on Appraisal Standards No. 9, *Identification of Intended Use and Intended Users*.

[6]  See Statement on Appraisal Standards No. 9, *Identification of Intended Use and Intended Users.*

[7]  See Advisory Opinion 19, *Unacceptable Assignment Conditions in Real Property Appraisal Assignments.*

[8]  See Statement on Appraisal Standards No. 6, *Reasonable Exposure Time in Real Property and Personal Property Market Value Opinions*. See also Advisory Opinion 7, *Marketing Time Opinions,* and Advisory Opinion 22, *Scope of Work in Market Value Appraisal Assignments, Real Property.*

[9]  See Statement on Appraisal Standards No. 3, *Retrospective Value Opinions*, and Statement on Appraisal Standards No. 4, *Prospective Value Opinions.*

[10] See Advisory Opinion 2, *Inspection of Subject Property,* and Advisory Opinion 23, *Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment.*

**STANDARD 1**

Comment on (i)–(v): The information used by an appraiser to identify the property characteristics must be from sources the appraiser reasonably believes are reliable.

An appraiser may use any combination of a property inspection and documents, such as a physical legal description, address, map reference, copy of a survey or map, property sketch, or photographs, to identify the relevant characteristics of the subject property.

When appraising proposed improvements, an appraiser must examine and have available for future examination, plans, specifications, or other documentation sufficient to identify the extent and character of the proposed improvements.[11]

Identification of the real property interest appraised can be based on a review of copies or summaries of title descriptions or other documents that set forth any known encumbrances.

An appraiser is not required to value the whole when the subject of the appraisal is a fractional interest, a physical segment, or a partial holding.

**(f)      identify any extraordinary assumptions necessary in the assignment;**

Comment: An extraordinary assumption may be used in an assignment only if:

- it is required to properly develop credible opinions and conclusions;
- the appraiser has a reasonable basis for the extraordinary assumption;
- use of the extraordinary assumption results in a credible analysis; and
- the appraiser complies with the disclosure requirements set forth in USPAP for extraordinary assumptions.

**(g)      identify any hypothetical conditions necessary in the assignment; and**

Comment: A hypothetical condition may be used in an assignment only if:

- use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison;
- use of the hypothetical condition results in a credible analysis; and
- the appraiser complies with the disclosure requirements set forth in USPAP for hypothetical conditions.

**(h)      determine the scope of work necessary to produce credible assignment results in accordance with the SCOPE OF WORK RULE.[12]**

**Standards Rule 1-3**

**When necessary for credible assignment results in developing a market value opinion, an appraiser must:**

**(a)      identify and analyze the effect on use and value of existing land use regulations, reasonably probable modifications of such land use regulations, economic supply and demand, the physical adaptability of the real estate, and market area trends; and**

---

[11] See Advisory Opinion 17, *Appraisals of Real Property with Proposed Improvements*.

[12] See Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work*.

Comment: An appraiser must avoid making an unsupported assumption or premise about market area trends, effective age, and remaining life.

**(b)** **develop an opinion of the highest and best use of the real estate.**

Comment: An appraiser must analyze the relevant legal, physical, and economic factors to the extent necessary to support the appraiser's highest and best use conclusion(s).

**Standards Rule 1-4**

**In developing a real property appraisal, an appraiser must collect, verify, and analyze all information necessary for credible assignment results.**

**(a)** **When a sales comparison approach is necessary for credible assignment results, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion.**

**(b)** **When a cost approach is necessary for credible assignment results, an appraiser must:**

**(i)** **develop an opinion of site value by an appropriate appraisal method or technique;**

**(ii)** **analyze such comparable cost data as are available to estimate the cost new of the improvements (if any); and**

**(iii)** **analyze such comparable data as are available to estimate the difference between the cost new and the present worth of the improvements (accrued depreciation).**

**(c)** **When an income approach is necessary for credible assignment results, an appraiser must:**

**(i)** **analyze such comparable rental data as are available and/or the potential earnings capacity of the property to estimate the gross income potential of the property;**

**(ii)** **analyze such comparable operating expense data as are available to estimate the operating expenses of the property;**

**(iii)** **analyze such comparable data as are available to estimate rates of capitalization and/or rates of discount; and**

**(iv)** **base projections of future rent and/or income potential and expenses on reasonably clear and appropriate evidence.[13]**

Comment: In developing income and expense statements and cash flow projections, an appraiser must weigh historical information and trends, current supply and demand factors affecting such trends, and anticipated events such as competition from developments under construction.

**(d)** **When developing an opinion of the value of a leased fee estate or a leasehold estate, an appraiser must analyze the effect on value, if any, of the terms and conditions of the lease(s).**

---

[13] See Statement on Appraisal Standards No. 2, *Discounted Cash Flow Analysis*.

**STANDARD 1**

**(e)** **When analyzing the assemblage of the various estates or component parts of a property, an appraiser must analyze the effect on value, if any, of the assemblage. An appraiser must refrain from valuing the whole solely by adding together the individual values of the various estates or component parts.**

Comment: Although the value of the whole may be equal to the sum of the separate estates or parts, it also may be greater than or less than the sum of such estates or parts. Therefore, the value of the whole must be tested by reference to appropriate data and supported by an appropriate analysis of such data.

A similar procedure must be followed when the value of the whole has been established and the appraiser seeks to value a part. The value of any such part must be tested by reference to appropriate data and supported by an appropriate analysis of such data.

**(f)** **When analyzing anticipated public or private improvements, located on or off the site, an appraiser must analyze the effect on value, if any, of such anticipated improvements to the extent they are reflected in market actions.**

**(g)** **When personal property, trade fixtures, or intangible items are included in the appraisal, the appraiser must analyze the effect on value of such non-real property items.**

Comment: When the scope of work includes an appraisal of personal property, trade fixtures or intangible items, competency in personal property appraisal (see STANDARD 7) or business appraisal (see STANDARD 9) is required.

**Standards Rule 1-5**

**When the value opinion to be developed is market value, an appraiser must, if such information is available to the appraiser in the normal course of business:[14]**

**(a)** **analyze all agreements of sale, options, and listings of the subject property current as of the effective date of the appraisal; and**

**(b)** **analyze all sales of the subject property that occurred within the three (3) years prior to the effective date of the appraisal.[15]**

Comment: See the Comments to Standards Rules 2-2(a)(viii), 2-2(b)(viii), and 2-2(c)(viii) for corresponding reporting requirements relating to the availability and relevance of information.

**Standards Rule 1-6**

**In developing a real property appraisal, an appraiser must:**

**(a)** **reconcile the quality and quantity of data available and analyzed within the approaches used; and**

**(b)** **reconcile the applicability and relevance of the approaches, methods and techniques used to arrive at the value conclusion(s).**

---

[14] See Advisory Opinion 24, *Normal Course of Business.*

[15] See Advisory Opinion 1, *Sales History.*

**STANDARD 2: REAL PROPERTY APPRAISAL, REPORTING**

**In reporting the results of a real property appraisal, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.**

> Comment: STANDARD 2 addresses the content and level of information required in a report that communicates the results of a real property appraisal.

> STANDARD 2 does not dictate the form, format, or style of real property appraisal reports. The form, format, and style of a report are functions of the needs of intended users and appraisers. The substantive content of a report determines its compliance.

**Standards Rule 2-1**

**Each written or oral real property appraisal report must:**

**(a)    clearly and accurately set forth the appraisal in a manner that will not be misleading;**

**(b)    contain sufficient information to enable the intended users of the appraisal to understand the report properly; and**

**(c)    clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions used in the assignment.**

**Standards Rule 2-2**

**Each written real property appraisal report must be prepared under one of the following three options and prominently state which option is used: Self-Contained Appraisal Report, Summary Appraisal Report, or Restricted Use Appraisal Report.[16]**

> Comment: When the intended users include parties other than the client, either a Self-Contained Appraisal Report or a Summary Appraisal Report must be provided. When the intended users do not include parties other than the client, a Restricted Use Appraisal Report may be provided.

> The essential difference among these three options is in the content and level of information provided. The appropriate reporting option and the level of information necessary in the report are dependent on the intended use and the intended users.

> An appraiser must use care when characterizing the type of report and level of information communicated upon completion of an assignment. An appraiser may use any other label in addition to, but not in place of, the label set forth in this Standard for the type of report provided.

> The report content and level of information requirements set forth in this Standard are minimums for each type of report. An appraiser must supplement a report form, when necessary, to ensure that any intended user of the appraisal is not misled and that the report complies with the applicable content requirements set forth in this Standards Rule.

---

[16] See Advisory Opinion 11, *Content of the Appraisal Report Options of Standards Rules 2-2 and 8-2,* and Advisory Opinion 12, *Use of the Appraisal Report Options of Standards Rules 2-2 and 8-2.*

**STANDARD 2**

A party receiving a copy of a Self-Contained Appraisal Report, Summary Appraisal Report, or Restricted Use Appraisal Report in order to satisfy disclosure requirements does not become an intended user of the appraisal unless the appraiser identifies such party as an intended user as part of the assignment.

**(a)**    **The content of a Self-Contained Appraisal Report must be consistent with the intended use of the appraisal and, at a minimum:**

　　　　**(i)**    **state the identity of the client and any intended users, by name or type;[17]**

　　　　　　Comment: An appraiser must use care when identifying the client to ensure a clear understanding and to avoid violations of the Confidentiality section of the ETHICS RULE. In those rare instances when the client wishes to remain anonymous, an appraiser must still document the identity of the client in the workfile but may omit the client's identity in the report.

　　　　　　Intended users of the report might include parties such as lenders, employees of government agencies, partners of a client, and a client's attorney and accountant.

　　　　**(ii)**    **state the intended use of the appraisal;[18]**

　　　　**(iii)**    **describe information sufficient to identify the real estate involved in the appraisal, including the physical and economic property characteristics relevant to the assignment;[19]**

　　　　　　Comment: The real estate involved in the appraisal can be specified, for example, by a legal description, address, map reference, copy of a survey or map, property sketch and/or photographs or the like. The information can include a property sketch and photographs in addition to written comments about the legal, physical, and economic attributes of the real estate relevant to the type and definition of value and intended use of the appraisal.

　　　　**(iv)**    **state the real property interest appraised;**

　　　　　　Comment: The statement of the real property rights being appraised must be substantiated, as needed, by copies or summaries of title descriptions or other documents that set forth any known encumbrances.

　　　　**(v)**    **state the type and definition of value and cite the source of the definition;**

　　　　　　Comment: Stating the definition of value also requires any comments needed to clearly indicate to intended users how the definition is being applied.[20]

　　　　　　When reporting an opinion of market value, state whether the opinion of value is:

---

[17] See Statement on Appraisal Standards No. 9, *Identification of Intended Use and Intended Users*.

[18] See Statement on Appraisal Standards No. 9, *Identification of Intended Use and Intended Users.*

[19] See Advisory Opinion 2, *Inspection of Subject Property,* and Advisory Opinion 23, *Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment*.

[20] See Statement on Appraisal Standards No. 6, *Reasonable Exposure Time in Real Property and Personal Property Market Value Opinions*. See also Advisory Opinion 7, *Marketing Time Opinions,* and Advisory Opinion 22, *Scope of Work in Market Value Appraisal Assignments, Real Property*.

USPAP 2010-2011 Edition
©The Appraisal Foundation

- in terms of cash or of financing terms equivalent to cash, or
- based on non-market financing or financing with unusual conditions or incentives.

When an opinion of market value is not in terms of cash or based on financing terms equivalent to cash, summarize the terms of such financing and explain their contributions to or negative influence on value.

**(vi)** **state the effective date of the appraisal and the date of the report;[21]**

Comment: The effective date of the appraisal establishes the context for the value opinion, while the date of the report indicates whether the perspective of the appraiser on the market and property as of the effective date of the appraisal was prospective, current, or retrospective.

**(vii)** **describe the scope of work used to develop the appraisal;[22]**

Comment: Because intended users' reliance on an appraisal may be affected by the scope of work, the report must enable them to be properly informed and not misled. Sufficient information includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

When any portion of the work involves significant real property appraisal assistance, the appraiser must describe the extent of that assistance. The signing appraiser must also state the name(s) of those providing the significant real property appraisal assistance in the certification, in accordance with Standards Rule 2-3.[23]

**(viii)** **describe the information analyzed, the appraisal methods and techniques employed, and the reasoning that supports the analyses, opinions, and conclusions; exclusion of the sales comparison approach, cost approach, or income approach must be explained;**

Comment: A Self-Contained Appraisal Report must include sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1. The amount of detail required will vary with the significance of the information to the appraisal.

The appraiser must provide sufficient information to enable the client and intended users to understand the rationale for the opinions and conclusions, including reconciliation of the data and approaches, in accordance with Standards Rule 1-6.

When reporting an opinion of market value, a summary of the results of analyzing the subject sales, options, and listings in accordance with Standards Rule 1-5 is required.[24] If such information is unobtainable, a statement on the efforts undertaken by the appraiser to obtain the information is required. If such information is irrelevant, a statement acknowledging the existence of the information and citing its lack of relevance is required.

---

[21] See Statement on Appraisal Standards No. 3, *Retrospective Value Opinions,* and Statement on Appraisal Standards No. 4, *Prospective Value Opinions.*

[22] See Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure* and Advisory Opinion 29, *An Acceptable Scope of Work.*

[23] See Advisory Opinion 31, *Assignments Involving More than One Appraiser.*

[24] See Advisory Opinion 1, *Sales History.*

**STANDARD 2**

    **(ix)**    **state the use of the real estate existing as of the date of value and the use of the real estate reflected in the appraisal; and, when an opinion of highest and best use was developed by the appraiser, describe the support and rationale for that opinion;**

    **(x)**    **clearly and conspicuously:**

- **state all extraordinary assumptions and hypothetical conditions; and**
- **state that their use might have affected the assignment results; and**

    **(xi)**    **include a signed certification in accordance with Standards Rule 2-3.**

**(b)**    **The content of a Summary Appraisal Report must be consistent with the intended use of the appraisal and, at a minimum:**

Comment: The essential difference between the Self-Contained Appraisal Report and the Summary Appraisal Report is the level of detail of presentation.

    **(i)**    **state the identity of the client and any intended users, by name or type;[25]**

Comment: An appraiser must use care when identifying the client to ensure a clear understanding and to avoid violations of the Confidentiality section of the ETHICS RULE. In those rare instances when the client wishes to remain anonymous, an appraiser must still document the identity of the client in the workfile but may omit the client's identity in the report.

Intended users of the report might include parties such as lenders, employees of government agencies, partners of a client, and a client's attorney and accountant.

    **(ii)**    **state the intended use of the appraisal;[26]**

    **(iii)**    **summarize information sufficient to identify the real estate involved in the appraisal, including the physical and economic property characteristics relevant to the assignment;[27]**

Comment: The real estate involved in the appraisal can be specified, for example, by a legal description, address, map reference, copy of a survey or map, property sketch, and/or photographs or the like. The summarized information can include a property sketch and photographs in addition to written comments about the legal, physical, and economic attributes of the real estate relevant to the type and definition of value and intended use of the appraisal.

    **(iv)**    **state the real property interest appraised;**

Comment: The statement of the real property rights being appraised must be substantiated, as needed, by copies or summaries of title descriptions or other documents that set forth any known encumbrances.

    **(v)**    **state the type and definition of value and cite the source of the definition;**

---

[25] See Statement on Appraisal Standards No. 9, *Identification of Intended Use and Intended Users.*

[26] See Statement on Appraisal Standards No. 9, *Identification of Intended Use and Intended Users.*

[27] See Advisory Opinion 2, *Inspection of Subject Property,* and Advisory Opinion 23, *Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment.*

USPAP 2010-2011 Edition
©The Appraisal Foundation

Comment: Stating the definition of value also requires any comments needed to clearly indicate to the intended users how the definition is being applied.[28]

When reporting an opinion of market value, state whether the opinion of value is:

- in terms of cash or of financing terms equivalent to cash, or
- based on non-market financing or financing with unusual conditions or incentives.

When an opinion of market value is not in terms of cash or based on financing terms equivalent to cash, summarize the terms of such financing and explain their contributions to or negative influence on value.

**(vi)    state the effective date of the appraisal and the date of the report;[29]**

Comment: The effective date of the appraisal establishes the context for the value opinion, while the date of the report indicates whether the perspective of the appraiser on the market and property as of the effective date of the appraisal was prospective, current, or retrospective.

**(vii)    summarize the scope of work used to develop the appraisal;[30]**

Comment: Because intended users' reliance on an appraisal may be affected by the scope of work, the report must enable them to be properly informed and not misled. Sufficient information includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

When any portion of the work involves significant real property appraisal assistance, the appraiser must summarize the extent of that assistance. The signing appraiser must also state the name(s) of those providing the significant real property appraisal assistance in the certification, in accordance with Standards Rule 2-3.[31]

**(viii)    summarize the information analyzed, the appraisal methods and techniques employed, and the reasoning that supports the analyses, opinions, and conclusions; exclusion of the sales comparison approach, cost approach, or income approach must be explained;**

Comment: A Summary Appraisal Report must include sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1. The amount of detail required will vary with the significance of the information to the appraisal.

The appraiser must provide sufficient information to enable the client and intended users to understand the rationale for the opinions and conclusions, including reconciliation of the data and approaches, in accordance with Standards Rule 1-6.

---

[28] See Statement on Appraisal Standards No. 6, *Reasonable Exposure Time in Real Property and Personal Property Market Value Opinions*. See also Advisory Opinion 7, *Marketing Time Opinions,* and Advisory Opinion 22*, Scope of Work in Market Value Appraisal Assignments, Real Property.*

[29] See Statement on Appraisal Standards No. 3, *Retrospective Value Opinions,* and Statement on Appraisal Standards No. 4, *Prospective Value Opinions.*

[30] See Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure,* and Advisory Opinion 29, *An Acceptable Scope of Work*.

[31] See Advisory Opinion 31, *Assignments Involving More than One Appraiser.*

**STANDARD 2**

When reporting an opinion of market value, a summary of the results of analyzing the subject sales, options, and listings in accordance with Standards Rule 1-5 is required.[32] If such information is unobtainable, a statement on the efforts undertaken by the appraiser to obtain the information is required. If such information is irrelevant, a statement acknowledging the existence of the information and citing its lack of relevance is required.

(ix) **state the use of the real estate existing as of the date of value and the use of the real estate reflected in the appraisal; and, when an opinion of highest and best use was developed by the appraiser, summarize the support and rationale for that opinion;**

(x) **clearly and conspicuously:**

- **state all extraordinary assumptions and hypothetical conditions; and**
- **state that their use might have affected the assignment results; and**

(xi) **include a signed certification in accordance with Standards Rule 2-3.**

(c) **The content of a Restricted Use Appraisal Report must be consistent with the intended use of the appraisal and, at a minimum:**

(i) **state the identity of the client, by name or type;[33] and state a prominent use restriction that limits use of the report to the client and warns that the appraiser's opinions and conclusions set forth in the report may not be understood properly without additional information in the appraiser's workfile;**

Comment: An appraiser must use care when identifying the client to ensure a clear understanding and to avoid violations of the Confidentiality section of the ETHICS RULE. In those rare instances when the client wishes to remain anonymous, an appraiser must still document the identity of the client in the workfile but may omit the client's identity in the report.

The Restricted Use Appraisal Report is for client use only. Before entering into an agreement, the appraiser should establish with the client the situations where this type of report is to be used and should ensure that the client understands the restricted utility of the Restricted Use Appraisal Report.

(ii) **state the intended use of the appraisal;[34]**

Comment: The intended use of the appraisal must be consistent with the limitation on use of the Restricted Use Appraisal Report option in this Standards Rule (i.e., client use only).

(iii) **state information sufficient to identify the real estate involved in the appraisal;[35]**

---

[32] See Advisory Opinion 1, *Sales History*

[33] See Statement on Appraisal Standards No. 9, *Identification of Intended Use and Intended Users*.

[34] See Statement on Appraisal Standards No. 9, *Identification of Intended Use and Intended Users*.

[35] See Advisory Opinion 2, *Inspection of Subject Property*. References to Advisory Opinions are for guidance only and do not incorporate Advisory Opinions into USPAP.

USPAP 2010-2011 Edition
©The Appraisal Foundation

Comment: The real estate involved in the appraisal can be specified, for example, by a legal description, address, map reference, copy of a survey or map, property sketch, and/or photographs or the like.

(iv)    **state the real property interest appraised;**

(v)    **state the type of value, and cite the source of its definition;[36]**

(vi)    **state the effective date of the appraisal and the date of the report;[37]**

Comment: The effective date of the appraisal establishes the context for the value opinion, while the date of the report indicates whether the perspective of the appraiser on the market and property as of the effective date of the appraisal was prospective, current, or retrospective.

(vii)    **state the scope of work used to develop the appraisal;[38]**

Comment: Because the client's reliance on an appraisal may be affected by the scope of work, the report must enable them to be properly informed and not misled. Sufficient information includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

When any portion of the work involves significant real property appraisal assistance, the appraiser must state the extent of that assistance. The signing appraiser must also state the name(s) of those providing the significant real property appraisal assistance in the certification, in accordance with Standards Rule 2-3.[39]

(viii)    **state the appraisal methods and techniques employed, state the value opinion(s) and conclusion(s) reached, and reference the workfile; exclusion of the sales comparison approach, cost approach, or income approach must be explained;**

Comment: An appraiser must maintain a specific, coherent workfile in support of a Restricted Use Appraisal Report. The contents of the workfile must include sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 and for the appraiser to produce a Summary Appraisal Report.

When reporting an opinion of market value, a summary of the results of analyzing the subject sales, options, and listings in accordance with Standards Rule 1-5 is required. If such information is unobtainable, a statement on the efforts undertaken by the appraiser to obtain the information is required. If such information is irrelevant, a statement acknowledging the existence of the information and citing its lack of relevance is required.

---

[36] See Statement on Appraisal Standards No. 6, *Reasonable Exposure Time in Real Property and Personal Property Market Value Opinions*. See also Advisory Opinion 7, *Marketing Time Opinions,* and Advisory Opinion 22, *Scope of Work in Market Value Appraisal Assignments, Real Property.*

[37] See Statement on Appraisal Standards No. 3, *Retrospective Value Opinions,* and Statement on Appraisal Standards No. 4, *Prospective Value Opinions.*

[38] See Advisory Opinions 28, *Scope of Work Decision, Performance, and Disclosure,* and Advisory Opinion 29, *An Acceptable Scope of Work.*

[39] See Advisory Opinion 31, *Assignments Involving More than One Appraiser.*

STANDARD 2

(ix)    **state the use of the real estate existing as of the date of value and the use of the real estate reflected in the appraisal; and, when an opinion of highest and best use was developed by the appraiser, state that opinion;**

(x)    **clearly and conspicuously:**

- **state all extraordinary assumptions and hypothetical conditions; and**
- **state that their use might have affected the assignment results; and**

(xi)    **include a signed certification in accordance with Standards Rule 2-3.**

**Standards Rule 2-3**

**Each written real property appraisal report must contain a signed certification that is similar in content to the following form:**

**I certify that, to the best of my knowledge and belief:**

— **the statements of fact contained in this report are true and correct.**
— **the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.**
— **I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.**
— **I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.**
— **my engagement in this assignment was not contingent upon developing or reporting predetermined results.**
— **my compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.**
— **my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*.**
— **I have (or have not) made a personal inspection of the property that is the subject of this report. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.)[40]**
— **no one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)**

Comment: A signed certification is an integral part of the appraisal report. An appraiser who signs any part of the appraisal report, including a letter of transmittal, must also sign this certification.

In an assignment that includes only assignment results developed by the real property appraiser(s), any appraiser(s) who signs a certification accepts full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal

---

[40] See Advisory Opinion 2, *Inspection of Subject Property*.

report.  In an assignment that includes personal property, business or intangible asset assignment results not developed by the real property appraiser(s), any real property appraiser(s) who signs a certification accepts full responsibility for the real property elements of the certification, for the real property assignment results, and for the real property contents of the appraisal report.

When a signing appraiser(s) has relied on work done by appraisers and others who do not sign the certification, the signing appraiser is responsible for the decision to rely on their work. The signing appraiser(s) is required to have a reasonable basis for believing that those individuals performing the work are competent. The signing appraiser(s) also must have no reason to doubt that the work of those individuals is credible.

The names of individuals providing significant real property appraisal assistance who do not sign a certification must be stated in the certification. It is not required that the description of their assistance be contained in the certification, but disclosure of their assistance is required in accordance with Standards Rule 2-2(a), (b), or (c)(vii), as applicable.[41]

## Standards Rule 2-4

**To the extent that it is both possible and appropriate, an oral real property appraisal report must address the substantive matters set forth in Standards Rule 2-2(b).**

> Comment: See the Record Keeping section of the ETHICS RULE for corresponding requirements.

---

[41] See Advisory Opinion 31, *Assignments Involving More than One Appraiser.*

STANDARD 3

**STANDARD 3: APPRAISAL REVIEW, DEVELOPMENT AND REPORTING**

**In developing an appraisal review assignment, an appraiser acting as a reviewer must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible appraisal review. In reporting the results of an appraisal review assignment, an appraiser acting as a reviewer must communicate each analysis, opinion, and conclusion in a manner that is not misleading.**

> Comment: STANDARD 3 is directed toward the substantive aspects of developing a credible opinion of the quality of another appraiser's work that was performed as part of an appraisal, appraisal review, or real property appraisal consulting assignment.

> STANDARD 3 also addresses the content and level of information required in a report that communicates the results of an appraisal review assignment. STANDARD 3 does not dictate the form, format, or style of Appraisal Review Reports. The substantive content of a report determines its compliance.

> In this Standard, the term "reviewer" is used to refer to an appraiser performing an appraisal review.

**Standards Rule 3-1**

**In developing an appraisal review, the reviewer must:**

**(a) be aware of, understand, and correctly employ those methods and techniques that are necessary to produce a credible appraisal review;**

> Comment: Changes and developments in economics, finance, law, technology, and society can have a substantial impact on the appraisal profession. To keep abreast of these changes and developments, the appraisal profession is constantly reviewing and revising appraisal methods and techniques and devising new methods and techniques to meet new circumstances. Each appraiser must continuously improve his or her skills to remain proficient in appraisal review.

> The reviewer must have the knowledge and experience needed to identify and perform the scope of work necessary to produce credible assignment results. Aspects of competency for an appraisal review, depending on the review assignment's scope of work, may include, without limitation, familiarity with the specific type of property or asset, market, geographic area, analytic method, and applicable laws, regulations and guidelines.

**(b) not commit a substantial error of omission or commission that significantly affects an appraisal review; and**

> Comment: A reviewer must use sufficient care to avoid errors that would significantly affect his or her opinions and conclusions. Diligence is required to identify and analyze the factors, conditions, data, and other information that would have a significant effect on the credibility of the assignment results.

**(c) not render appraisal review services in a careless or negligent manner, such as making a series of errors that, although individually might not significantly affect the results of an appraisal review, in the aggregate affects the credibility of those results.**

USPAP 2010-2011 Edition
©The Appraisal Foundation

Comment: Perfection is impossible to attain, and competence does not require perfection. However, an appraiser must not render appraisal review services in a careless or negligent manner.  This Standards Rule requires a reviewer to use due diligence and due care.

**Standards Rule 3-2**

**In developing an appraisal review, the reviewer must:**

**(a)    identify the client and other intended users;**

**(b)    identify the intended use of the reviewer's opinions and conclusions;**

Comment: A reviewer must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.  A reviewer must not advocate for a client's objectives.

The intended use refers to the use of the reviewer's opinions and conclusions by the client and other intended users; examples include, without limitation, quality control, audit, qualification, or confirmation.

**(c)    identify the purpose of the appraisal review, including whether the assignment includes the development of the reviewer's own opinion of value, review opinion or real property appraisal consulting conclusion  related to the work under review;**

Comment: The purpose of an appraisal review assignment relates to the reviewer's objective; examples include, without limitation, to determine if the results of the work under review are credible for the intended user's intended use, or to evaluate compliance with relevant USPAP requirements, client requirements, or applicable regulations.

In the review of an appraisal assignment, the reviewer may provide an opinion of value for the property that is the subject of the work under review.

In the review of an appraisal review assignment, the reviewer may provide an opinion of quality for the work that is the subject of the appraisal review assignment.

In the review of an appraisal consulting assignment, the reviewer may provide an analysis, recommendation, or opinion for the consulting problem that is the subject of the real property appraisal consulting assignment.

**(d)    identify the work under review and the characteristics  of that work which are relevant to the intended use and purpose of the appraisal review, including:**

**(i)    any ownership interest in the property that is the subject of the work under review;**

**(ii)    the date of the work under review and the effective date of the opinions or conclusions in the work under review;**

**(iii)    the appraiser(s) who completed the work under review, unless the identity is withheld by the client; and**

**(iv)    the physical, legal, and economic characteristics of the property, properties, property type(s), or market area in the work under review.**

Comment: The subject of an appraisal review assignment may be all or part of a report, a workfile, or a combination of these, and may be related to an appraisal, appraisal review, or appraisal consulting assignment.

**STANDARD 3**

**(e)**    **identify the effective date of the reviewer's opinions and conclusions;**

**(f)**    **identify any extraordinary assumptions necessary in the review assignment;**

Comment:  An extraordinary assumption may be used in a review assignment only if:

- it is required to properly develop credible opinions and conclusions;
- the reviewer has a reasonable basis for the extraordinary assumption;
- use of the extraordinary assumption results in a credible analysis; and
- the reviewer complies with the disclosure requirements set forth in USPAP for extraordinary assumptions.

**(g)**    **identify any hypothetical conditions necessary in the review assignment; and**

Comment: A hypothetical condition may be used in a review assignment only if:

- use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison;
- use of the hypothetical condition results in a credible analysis; and
- the reviewer complies with the disclosure requirements set forth in USPAP for hypothetical conditions

**(h)**    **determine the scope of work  necessary to produce credible assignment results in accordance with the SCOPE OF WORK RULE.**

Comment: Reviewers have broad flexibility and significant responsibility in determining the appropriate scope of work in an appraisal review assignment.

Information that should have been considered by the original appraiser can be used by the reviewer in developing an opinion as to the quality of the work under review.

Information that was not available to the original appraiser in the normal course of business may also be used by the reviewer; however, the reviewer must not use such information in the reviewer's development of an opinion as to the quality of the work under review.

**Standards Rule 3-3**

**In developing an appraisal review, a reviewer must apply the appraisal review methods and techniques that are necessary for credible assignment results.**

**(a)**    **When necessary for credible assignment results in the review of analyses, opinions, and conclusions, the reviewer must:**

**(i)**    **develop an opinion as to whether the analyses are appropriate within the context of the requirements applicable to that work;**

**(ii)**    **develop an opinion as to whether the opinions and conclusions are credible within the context of the requirements applicable to that work; and**

**(iii)**    **develop the reasons for any disagreement.**

Comment: Consistent with the reviewer's scope of work, the reviewer is required to develop an opinion as to the completeness, accuracy, adequacy, relevance, and reasonableness of the analysis in the work under review, given law, regulations, or intended user requirements applicable to the work under review.

**(b)     When necessary for credible assignment results in the review of a report, the reviewer must:**

> **(i)     develop an opinion as to whether the report is appropriate and not misleading within the context of the requirements applicable to that work; and**

> **(ii)    develop the reasons for any disagreement.**

Comment: Consistent with the reviewer's scope of work, the reviewer is required to develop an opinion as to the completeness, accuracy, adequacy, relevance, and reasonableness of the report, given law, regulations, or intended user requirements applicable to that work.

**(c)     When the scope of work includes the reviewer developing his or her own opinion of value, review opinion, or real property appraisal consulting conclusion, the reviewer must comply with the Standard applicable to the development of that opinion.**

> **(i)     The requirements of STANDARDS 1, 6, 7, and/or 9 apply to the reviewer's opinion of value for the property that is the subject of the appraisal review assignment.**

> **(ii)    The requirements of STANDARD 3 apply to the reviewer's opinion of quality for the work that is the subject of the appraisal review assignment.**

> **(iii)   The requirements of STANDARD 4 apply to the reviewer's analysis, recommendation, or opinion for the consulting problem that is the subject of the appraisal consulting assignment.**

Comment: These requirements apply to:

- The reviewer's own opinion of value when the subject of the review is the product of an appraisal assignment;
- The reviewer's own opinion regarding the work reviewed by another when the subject of the review is the product of an appraisal review assignment; or
- The reviewer's own appraisal consulting conclusion when the subject of the review is the product of an appraisal consulting assignment.

These requirements apply whether the reviewer's own opinion:

- concurs with the opinions and conclusions in the work under review; or
- differs from the opinion and conclusions in the work under review.

When the appraisal review scope of work includes the reviewer developing his or her own opinion of value, review opinion or real property appraisal consulting conclusion, the following apply:

- The reviewer's scope of work in developing his or her own opinion of value, review opinion, or real property appraisal consulting conclusion may be different from that of the work under review.
- The effective date of the appraisal, appraisal review, or appraisal consulting opinions and conclusions may be the same or different from the effective date of the work under review.
- The reviewer is not required to replicate the steps completed by the original appraiser.. Those items in the work under review that the reviewer concludes are credible can be extended to the reviewer's development process on the basis of an extraordinary assumption. Those items not deemed to be credible must be replaced with information or analysis developed in conformance with STANDARD 1, 3, 4, 6, 7, or 9, as applicable, to produce credible assignment results.

**STANDARD 3**

**Standards Rule 3-4**

**Each written or oral Appraisal Review Report must be separate from the work under review and must:**

**(a)     clearly and accurately set forth the appraisal review in a manner that will not be misleading;**

**(b)     contain sufficient information to enable the intended users of the appraisal review to understand the report properly; and**

**(c)     clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions used in the assignment.**

Comment: An Appraisal Review Report communicates the results of an appraisal review, which can have as its subject another appraiser's work in an appraisal, appraisal review, or appraisal consulting assignment.

The report content and level of information in the Appraisal Review Report is specific to the needs of the client, other intended users, the intended use, and requirements applicable to the assignment. The reporting requirements set forth in this Standard are the minimum for an Appraisal Review Report.

**Standards Rule 3-5**

**The content of an Appraisal Review Report must be consistent with the intended use of the appraisal review and, at a minimum:**

**(a)     state the identity of the client and any intended users, by name or type;**

**(b)     state the intended use of the appraisal review;**

**(c)     state the purpose of the appraisal review;**

**(d)     state information sufficient to identify:**

**(i)     the work under review, including any ownership interest in the property that is the subject of the work under review;**

**(ii)     the date of the work under review;**

**(iii)     the effective date of the opinions or conclusions in the work under review; and**

**(iv)     the appraiser(s) who completed the work under review, unless the identity is withheld by the client.**

Comment: If the identity of the appraiser(s) in the work under review is withheld by the client, that fact must be stated in the appraisal review report.

**(e)     state the effective date of the appraisal review;**

**(f)     clearly and conspicuously:**

- **state all extraordinary assumptions and hypothetical conditions; and**
- **state that their use might have affected the assignment results.**

**(g)     state the scope of work used to develop the appraisal review;**

Comment: Because intended users' reliance on an appraisal review may be affected by the scope of work, the appraisal review report must enable them to be properly informed and not

U-34

misled.  Sufficient information includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

When any portion of the work involves significant appraisal, appraisal review, or appraisal consulting assistance, the reviewer must state the extent of that assistance.  The signing reviewer must also state the name(s) of those providing the significant assistance in the certification, in accordance with Standards Rule 3-6.

**(h)    state the reviewer's opinions and conclusions about the work under review, including the reasons for any disagreement;**

Comment: The report must provide sufficient information  to enable the client and intended users to understand the rationale for the reviewer's opinions and conclusions.

**(i)    when the scope of work includes the reviewer's development of an opinion of value, review opinion, or real property appraisal consulting conclusion related to the work under review, the reviewer must:**

> **(i)    state which information, analyses, opinions, and conclusions in the work under review that the reviewer accepted as credible and used in developing the reviewer's opinion and conclusions;**

> **(ii)    at a minimum, summarize any additional information relied on and the reasoning for the reviewer's opinion of value, review opinion, or real property appraisal consulting conclusion related to the work under review;**

> **(iii)    clearly and conspicuously:**

>> • **state all extraordinary assumptions and hypothetical conditions connected with the reviewer's opinion of value, review opinion, or real property appraisal consulting conclusion related to the work under review; and**

>> • **state that their use might have affected the assignment results.**

Comment: The reviewer may include his or her own opinion of value, review opinion, or appraisal consulting conclusion related to the work under review within the appraisal review report itself without preparing a separate report.  However, data and analyses provided by the reviewer to support a different opinion or conclusion must match, at a minimum, except for the certification requirements, the reporting requirements for a:

- Summary Appraisal Report for a real property appraisal (Standards Rule 2-2(b));
- Summary Appraisal Report for a personal property appraisal (Standards Rule 8-2(b));
- Appraisal Review Report for an appraisal review (Standards Rule 3-5);
- Appraisal Consulting Report for real property appraisal consulting (Standards Rule 5-2);
- Mass Appraisal Report for mass appraisal (Standards Rule 6-8); and
- Appraisal Report for business appraisal (Standards Rule 10-2(a)).

**Standards Rule 3-6**

**Each written Appraisal Review Report must contain a signed certification that is similar in content to the following form:**

**I certify that, to the best of my knowledge and belief:**

**—    the statements of fact contained in this report are true and correct.**

**STANDARD 3**

— **the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.**

— **I have no (or the specified) present or prospective interest in the property that is the subject of the work under review and no (or the specified) personal interest with respect to the parties involved.**

— **I have no bias with respect to the property that is the subject of the work under review or to the parties involved with this assignment.**

— **my engagement in this assignment was not contingent upon developing or reporting predetermined results.**

— **my compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in this review or from its use.**

— **my compensation for completing this assignment is not contingent upon the development or reporting of predetermined assignment results or assignment results that favors the cause of the client, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal review.**

— **my analyses, opinions, and conclusions were developed and this review report was prepared in conformity with the *Uniform Standards of Professional Appraisal Practice*.**

— **I have (or have not) made a personal inspection of the subject of the work under review. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the subject of the work under review.) (For reviews of a business or intangible asset appraisal assignment, the inspection portion of the certification is not applicable.)**

— **no one provided significant appraisal, appraisal review, or appraisal consulting assistance to the person signing this certification. (If there are exceptions, the name of each individual(s) providing appraisal, appraisal review, or appraisal consulting assistance must be stated.)**

Comment: A signed certification is an integral part of the Appraisal Review Report. A reviewer who signs any part of the appraisal review report, including a letter of transmittal, must also sign the certification.

Any reviewer who signs a certification accepts responsibility for all elements of the certification, for the assignment results, and for the contents of the Appraisal Review Report.

Appraisal review is distinctly different from the cosigning activity addressed in Standards Rules 2-3, 5-3, 6-9, 8-3, and 10-3. To avoid confusion between these activities, a reviewer performing an appraisal review must not sign the work under review unless he or she intends to accept responsibility as a cosigner of that work.

When a signing appraiser has relied on work done by appraisers and others who do not sign the certification, the signing appraiser is responsible for the decision to rely on their work. The signing appraiser is required to have a reasonable basis for believing that those individuals performing the work are competent. The signing appraiser also must have no reason to doubt that the work of those individuals is credible.

The names of individuals providing significant appraisal, appraisal review, or appraisal consulting assistance who do not sign a certification must be stated in the certification. It is not required that the description of their assistance be contained in the certification, but disclosure of their assistance is required in accordance with Standards Rule 3-5(g).

Case: 4:17-cv-02876-PLC   Doc. #: 64-4   Filed: 03/20/19   Page: 48 of 55 PageID #: 910

**Standards Rule 3-7**

**To the extent that it is both possible and appropriate, an oral Appraisal Review Report must address the substantive matters set forth in Standards Rule 3-5.**

> Comment: See the Record Keeping section of the ETHICS RULE for corresponding requirements.

**STANDARD 4: REAL PROPERTY APPRAISAL CONSULTING, DEVELOPMENT**

**In developing a real property appraisal consulting assignment, an appraiser must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete the research and analyses necessary to produce credible results.**

> Comment: Real property appraisal consulting assignments encompass a wide variety of problems to be solved. However, the purpose of an assignment under this Standard is always to develop, without advocacy, an analysis, recommendation, or opinion where at least one opinion of value is a component of the analysis leading to the assignment results.

> In some assignments, the opinion of value may originate from a source other than the consulting appraiser. In other assignments, the consulting appraiser may have to develop the opinion of value as a step in the analyses leading to the assignment results.

> An opinion of value or an opinion as to the quality of another appraiser's work cannot be the purpose of an appraisal consulting assignment. Developing an assignment for those purposes is an appraisal or an appraisal review assignment, respectively. Misrepresenting the purpose of an assignment performed under this Standard is a violation of the ETHICS RULE.

> The ETHICS and COMPETENCY RULES apply to the appraiser performing an appraisal consulting assignment. Appraisers practicing under this Standard must perform the assignment with impartiality, objectivity, independence, and without accommodation of personal interests.

> Except when required by law, regulation, agreement, or choice, this appraisal consulting STANDARD does not apply to services provided by an appraiser acting under the standards of other professions or business activities. For example, when an appraiser who is also an investment consultant provides a service that does not require an opinion of value, that appraiser, acting as an investment consultant, is not performing an assignment addressed by this Standard.

**Standards Rule 4-1**

**In performing a real property appraisal consulting assignment, an appraiser must:**

**(a)    be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce credible results;**

**(b)    not commit a substantial error of omission or commission that significantly affects the results of an appraisal consulting assignment; and**

**(c)    not render appraisal consulting services in a careless or negligent manner, such as by making a series of errors that, although individually might not significantly affect the results, in the aggregate affect the credibility of those results.**

USPAP 2010-2011 Edition
©The Appraisal Foundation

**Standards Rule 4-2**

**In developing real property appraisal consulting assignment results, an appraiser must:**

**(a)    identify the client and other intended users;**[42]

**(b)    identify the intended use of the appraisal consulting assignment results;**[43]

**(c)    identify:**

    **(i)    the analysis, recommendation or opinion to be developed; and**

    **(ii)    the type and definition of value developed in the appraisal(s) that is a necessary component of an analysis supporting the appraisal consulting assignment results;**

        Comment: If the applicable type and definition of value is market value, ascertain whether that value is to be the most probable price:

        • in terms of cash; or
        • in terms of financial arrangements equivalent to cash; or
        • in other precisely defined terms; and
        • if the opinion of value is to be based on non-market financing or financing with unusual conditions or incentives, the terms of such financing must be clearly identified and the appraiser's opinion of their contributions to or negative influence on value must be developed by analysis of relevant market data.

**(d)    identify the effective date of the appraisal consulting assignment results;**[44]

**(e)    identify the physical, legal, and economic characteristics of the property, properties, property type(s), or market area that are relevant**[45] **to:**

    **(i)    the analysis, recommendation or opinion to be developed in the appraisal consulting assignment; and**

    **(ii)    an opinion of value that is a necessary component of an analysis supporting the appraisal consulting assignment results;**

**(f)    identify any extraordinary assumptions necessary in the appraisal consulting assignment and in developing the opinion(s) of value necessary to support the appraisal consulting assignment results;**

    Comment: An extraordinary assumption may be used in an assignment only if:

        • it is required to properly develop credible opinions and conclusions;
        • the  appraiser has a reasonable basis for the extraordinary assumption;
        • use of the extraordinary assumption results in a credible analysis; and

---

[42] See Statement on Appraisal Standards No. 9, *Identification of Intended Use and Intended Users*.

[43] See Statement on Appraisal Standards No. 9, *Identification of Intended Use and Intended Users*.

[44] See Statement on Appraisal Standards No. 3, *Retrospective Value Opinions* and Statement on Appraisal Standards No. 4, *Prospective Value Opinions*.

[45] See Advisory Opinion 2, *Inspection of Subject Property*, and Advisory Opinion 23, *Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment*.

**STANDARD 4**

• the appraiser complies with the disclosure requirements set forth in USPAP for extraordinary assumptions.

**(g)   identify any hypothetical conditions necessary in the appraisal consulting assignment and in developing the opinion(s) of value necessary to support the appraisal consulting assignment results; and**

Comment: A hypothetical condition may be used in an assignment only if:

• use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison;
• use of the hypothetical condition results in a credible analysis; and
• the appraiser complies with the disclosure requirements set forth in USPAP for hypothetical conditions.

**(h)   determine the scope of work necessary to produce credible assignment results in accordance with the SCOPE OF WORK RULE[46], including:**

**(i)   the appraisal consulting methods and techniques to be employed,  and**

**(ii)   the research and analysis required to:**

• **ascertain the relevance and credibility of an opinion of value obtained from a source other than the appraiser performing the appraisal consulting assignment, or**
• **develop an opinion of value that is a necessary component of an analysis supporting the appraisal consulting assignment results;**

Comment: An appraiser must ensure that any opinion of value used in an appraisal consulting assignment was developed in compliance with STANDARD 1.

If an opinion of value used in a real property appraisal consulting assignment is from a source other than the consulting appraiser, the assignment may include a review, prepared in compliance with STANDARD 3, of that appraisal. Alternatively, the appraiser may accept an appraisal from another source using an extraordinary assumption in the appraisal consulting assignment, provided that all conditions necessary to use such an extraordinary assumption are fulfilled.

If the opinion of value is from an appraisal developed by the appraiser performing the real property appraisal consulting assignment, the appraiser must complete the steps set forth in STANDARD 1.

---

[46] See Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure,* and Advisory Opinion 29, *An Acceptable Scope of Work*.

**STANDARD 5:  REAL PROPERTY APPRAISAL CONSULTING**, **REPORTING**

**In reporting the results of a real property appraisal consulting assignment, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.**

> Comment: STANDARD 5 addresses the content and level of information required in a report that communicates the results of a real property appraisal consulting assignment.

> An appraiser must explain logically and convincingly the reasoning that leads to his or her conclusions. The flow of information must be orderly and progressive. The level of information necessary in the report is dependent on the intended use and intended users. The level of information detail in the report must be sufficient to enable the client and intended users of the report to understand the appraisal consulting assignment results and not be misled.

> STANDARD 5 does not dictate the form, format, or style of real property appraisal consulting reports.  The form, format, and style of a report are functions of the needs of intended users and appraisers.  The substantive content of a report determines its compliance.

**Standards Rule 5-1**

**Each written or oral real property appraisal consulting report must:**

**(a)    clearly and accurately set forth the appraisal consulting assignment results in a manner that will not be misleading;**

**(b)    contain sufficient information to enable the intended users of the appraisal consulting assignment results to understand the report properly; and**

**(c)    clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions used in the assignment.**

> Comment: The content of a real property appraisal consulting report must be sufficiently comprehensive so that an intended user can understand the problem addressed and the analyses, and follow the reasoning through each step of the analytical process. It is essential that throughout the report the data, analyses, assumptions and conclusions are logical and adequately supported.

**Standards Rule 5-2**

**The content of each written real property appraisal consulting report must be consistent with the intended use of the appraisal consulting assignment results and, at a minimum:**

**(a)    state the identity of the client and any intended users, by name or type;[47]**

> Comment:  An appraiser must use care when identifying the client to ensure a clear understanding and to avoid violations of the Confidentiality section of the ETHICS RULE. In those rare instances where the client wishes to remain anonymous, an appraiser must still document the identity of the client in the workfile, but may omit the client's identity in the report.

---

[47] See Statement on Appraisal Standards No. 9, *Identification of Intended Use and Intended Users*.

**STANDARD 5**

Intended users of the report might include parties such as lenders, employees of government agencies, partners of a client, and a client's attorney and accountant.

**(b)    state the analysis, recommendation or opinion developed;**

**(c)    state the intended use of the appraisal consulting assignment;[48]**

**(d)    state information sufficient to identify the real property pertinent to the appraisal consulting assignment, and state the physical, legal, and economic characteristics of the property, properties, property types, or market area pertinent to the assignment;[49]**

**(e)    state the effective date of the appraisal consulting assignment results, the date of appraisal pertinent to each opinion of value used in an analysis in support of the appraisal consulting results, and the date of the appraisal consulting report;[50]**

**(f)    state the scope of work used to develop the assignment results;[51]**

Comment: Because intended users' reliance on assignment results may be affected by the scope of work, the report must enable them to be properly informed and not misled. Sufficient information includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

When any portion of the work involves significant real property appraisal or appraisal consulting assistance, the appraisal consultant must describe the extent of that assistance. The signing consulting appraiser must also state the name(s) of those providing significant real property appraisal or appraisal consulting assistance in the certification, in accordance with Standards Rule 5-3.[52]

**(g)    summarize the information used in the appraisal consulting analyses, the appraisal consulting methods and techniques employed, and the reasoning that supports the analyses, opinions, and conclusions;**

Comment: If the value opinion used in the appraisal consulting assignment was not performed by the consulting appraiser, the appraisal consulting report must include:

- the information required in Standards Rule 3-5, or
- a statement of the appraisal review results, and a reference to the appraisal review documentation retained in the appraisal consultant's appraisal consulting assignment workfile, or
- a statement supporting the use of that appraisal as an extraordinary assumption in the appraisal consulting assignment.

If an opinion of value was developed by the consulting appraiser, the appraisal consulting report must include the information required to comply with Standards Rule 2-2(a) or (b)(ii) through (x). Standards Rule 2-2(c)(ii) through (x) is also permitted if the client is the only intended user of the assignment results.

---

[48] See Statement on Appraisal Standards No. 9, *Identification of Intended Use and Intended Users.*

[49] See Advisory Opinion 2, *Inspection of Subject Property.*

[50] See Statement on Appraisal Standards No. 3, *Retrospective Value Opinions,* and Statement on Appraisal Standards No. 4, *Prospective Value Opinions.*

[51] See Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure,* and 29, *An Acceptable Scope of Work.*

[52] See Advisory Opinion 31, *Assignments Involving More than One Appraiser.*

USPAP 2010-2011 Edition
©The Appraisal Foundation

(h)    state the appraiser's appraisal consulting recommendations (if any), and conclusions or opinions;

(i)    clearly and conspicuously:

- state all extraordinary assumptions and hypothetical conditions; and
- state that their use might have affected the assignment results; and

(j)    include a signed certification in accordance with Standards Rule 5-3.

**Standards Rule 5-3**

**Each written real property appraisal consulting report  must contain a signed certification that is similar in content to the following form:**

**I certify that, to the best of my knowledge and belief:**

— **the statements of fact contained in this report are true and correct.**

— **the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, conclusions, and recommendations.**

— **I have no (or the specified) present or prospective interest in the property that is the subject of this report, and I have no (or the specified) personal interest with respect to the parties involved.**

— **I have no bias with respect to any property that is the subject of this report or to the parties involved with this assignment.**

— **my engagement in this assignment was not contingent upon developing or reporting predetermined results.**

— **my compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal consulting assignment.**

— **my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*.**

— **I have (or have not) made a personal inspection of the property that is the subject of this report. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the property).[53]**

— **no one provided significant real property appraisal or appraisal consulting assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal or appraisal consulting assistance must be stated.)**

Comment: A signed certification is an integral part of the appraisal consulting report.  An appraiser who signs any part of the appraisal consulting report, including a letter of transmittal, must also sign the certification.

In an assignment that includes only assignment results developed by the real property appraiser(s), any appraiser(s) who signs a certification accepts full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal consulting report.  In an assignment that includes personal property, business or intangible

---

[53] See Advisory Opinion 2, *Inspection of Subject Property*.

**STANDARD 5**

asset assignment results not developed by the real property appraiser(s), any real property appraiser(s) who signs a certification accepts full responsibility for the real property elements of the certification, for the real property assignment results, and for the real property contents of the appraisal consulting report.

If the signing consulting appraiser(s) has relied on work done by appraisers and others who do not sign the certification, then the signing consulting appraiser(s) is responsible for the decision to rely on such work. The signing consulting appraiser is required to have a reasonable basis for believing that those individuals performing the work are competent. The signing appraiser(s) also must have no reason to doubt that the work of those individuals is credible.

The names of individuals providing significant real property appraisal or appraisal consulting assistance who do not sign the certification must be stated in the certification. It is not required that the description of their assistance be contained in the certification, but disclosure of their assistance is required in accordance with Standards Rule 5-2(f).[54]

**Standards Rule 5-4**

**To the extent that it is both possible and appropriate, an oral real property appraisal consulting report must address the substantive matters set forth in Standards Rule 5-2.**

Comment: See the Record Keeping section of the ETHICS RULE for corresponding requirements.

---

[54] See Advisory Opinion 31, *Assignments Involving More than One Appraiser.*