**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

JOSEPH MEEHAN,

          Plaintiff,

    v.

PNC FINANCIAL SERVICES GROUP, INC.,

          Defendant.

Case No. 4:17-cv-02876-PLC

## RESPONSES TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, PNC Financial Services Group, Inc., by and through its attorneys, hereby

submits its Response to Plaintiff's Statement of Additional Material Facts in Opposition to

Defendant's Motion for Summary Judgment as follows:

**Obligations of Appraiser Reviewers**

**PARAGRAPH NO. 1:**

Under the FDIC's Interagency Appraisal and Evaluation Guidelines 2010, the duties related to appraisal reviewers include:

> "[A]n institution should review appraisals and evaluations to ensure that they comply with the Agencies' appraisal regulations and are consistent with supervisory guidance and its own internal policies. This review also should ensure that an appraisal or evaluation contains sufficient information and analysis to support the decision to engage in the transaction.

> Through the review process, the institution should be able to assess the reasonableness of the appraisal or evaluation, including whether the valuation methods, assumptions, and data sources are appropriate and well-supported. An institution may use the review findings to monitor and evaluate the competency and ongoing performance of appraisers and persons who perform evaluations."

> (FDIC Interagency Appraisal and Evaluation Guidelines 2010, Exhibit J, at Section XV, p. 15)

56484497v.1

**RESPONSE:**

Admit.

**PARAGRAPH NO. 2:**

The REVS group is obligated to comply with the FDIC Interagency Appraisal and Evaluations Guidelines of 2010. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 26: 8–10 and 19–25, 27:1–6, 34:20–25, and 35:1–10; FDIC Interagency Appraisal and Evaluation Guidelines 2010, Exhibit J)

**RESPONSE:**

Admit.

**PARAGRAPH NO. 3:**

The FDIC Interagency Appraisal and Evaluations Guidelines of 2010, Section XV Reviewing Appraisals and Evaluations, states that institutions such as PNC should, at minimum, "[a]ddress the independence, educational and training qualifications, and role of the reviewer [and r]eflect a risk-focused approach for determining the depth of the review[.]" (FDIC Interagency Appraisal and Evaluation Guidelines 2010, Exhibit J, at p. 15)

**RESPONSE:**

Admit.

**PARAGRAPH NO. 4:**

The FDIC Interagency Appraisal and Evaluations Guidelines of 2010, Section XVII, Program Compliance, states "An institution's appraisal and evaluation policies should establish internal controls to promote an effective appraisal and evaluation program." and they should "[e]stablish procedures to test the quality of the appraisal and evaluation review process." (Id. at p. 20)

**RESPONSE:**

Admit.

**PARAGRAPH NO. 5:**

Defendant PNC's Code of Ethics and Conduct includes values of integrity and "customer focus" and to "[a]lways act in a professional, honest, and ethical manner[.]" (PNC Code of Ethics and Conduct, Exhibit I, at Meehan04507 and Meehan4063)

**RESPONSE:**

Admit.

**PARAGRAPH NO. 6:**

The REVS group is responsible for valuation products, which includes appraisal and non-appraisal products. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 27–28 and 81–83) Review appraisers, like Meehan, were tasked with reviewing appraisal products and did not review non-appraisal products. (Id. at 82–83)

**RESPONSE:**

Admit.

**PNC took appraisal reviews from Meehan when he refused to violate the law**

**PARAGRAPH NO. 7:**

In January 2011, PNC removed Meehan from an appraisal review after Meehan expressed serious concerns that an appraisal's valuation of a property assumed a future lease would be signed, even though the lease had not yet been signed and the property had been vacant for ten years. (January 2011 Review, Exhibit AA, Meehan0345–0362).

**RESPONSE:**

Object. The cited documents are not supported by admissible evidence. The documents cited in Paragraph 7 have not been authenticated by any witness, are inadmissible hearsay, and have no mention of Joseph Meehan as being assigned to the project, particularly where the communications regarding the valuation of property are primarily between Larissa Childs and Paul Higgins. There is no evidence that Meehan was ever involved in the review of the appraisal or that he "expressed serious concerns" about the valuation. *See Brown v. Penrod,* 2018 WL 2981332, at \*3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).

**PARAGRAPH NO. 8:**

Meehan refused to approve the appraisal, so PNC took his review and gave it to fellow reviewer, Ron Sacco, who complied and approved the appraisal without making any additional notations regarding the additional risk that would be incurred by relying upon future, unsigned lease agreements, or acknowledging the various issues Meehan had raised when he was the assigned reviewer. (Id. at 0355; Meehan Interrogatory, Exhibit C, at p. 1).

3

56484497v.1

**RESPONSE:**

Object.  The cited documents are not supported by admissible evidence.  The cited documents have not been authenticated by any witness, are inadmissible hearsay, and have no mention of Joseph Meehan as being assigned to the project and removed and replaced based on his "refus[al] to approve the appraisal."  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).  Under Federal Rule 56(e), Meehan fails to meet his burden and go beyond the pleadings or by the "depositions, answers to interrogatories, and admissions on file," to designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**PARAGRAPH NO. 9:**

This violated USPAP 2010-2011, Standard Rule 3-4(a) that an Appraisal Review Report "clearly and accurately set forth the appraisal review in a manner that will not be misleading;" and 3-4(b) that the Report "contain sufficient information to enable the intended users of the appraisal review to understand the report properly." (USPAP 2010-2011, Exhibit D, at U-34)

**RESPONSE:**

Object.  Paragraph 9 does not set forth facts but rather, a legal conclusion, which is improper for purposes of summary judgment.  *Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at *1 (E.D. Mo. June 23, 2005) (noting statement of facts contained legal arguments and conclusory statements rather than issues of fact required by local rules and were inappropriate for summary judgment consideration); *see also Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at *2 (W.D. Mo. Mar. 4, 2009) (citing cases denying summary judgment where statements of fact included legal arguments and conclusions which were "wholly improper" and inappropriate for summary judgment).

**PARAGRAPH NO. 10:**

In April 2011, PNC took a review from Meehan and reassigned to reviewer Steve Mustain after Meehan refused to sign off on an appraisal. The original, third-party appraiser was

killed in an auto accident, so the appraiser could no longer correct the appraisal that had USPAP violations. Per REVS policy, Meehan sought to hire a new appraiser or field reviewer to fix the violations. Instead, PNC reassigned the appraisal to Mustain, who accepted the original appraisal complete with USPAP violations. (April 2011 Review, Exhibit BB, Meehan000756–0798, 756, and 781–784; Meehan Interrogatory, Exhibit C, at pp. 1–2; Meehan Deposition, Exhibit A,235:5–19).

**RESPONSE:**

Deny and object.  The cited documents are either inadmissible hearsay or do not support

the statements made in Paragraph 10.  The cited documents do not show that "Meehan refused to

sign off on an appraisal" and that as a result, PNC reassigned the review to Steve Mustain.

*Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at *1 (E.D. Mo. June 23, 2005) (noting

statement of facts contained legal arguments and conclusory statements rather than issues of fact

required by local rules and were inappropriate for summary judgment consideration); *see also*

*Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at *2 (W.D. Mo. Mar. 4, 2009) (citing

cases denying summary judgment where statements of fact included legal arguments and

conclusions which were "wholly improper" and inappropriate for summary judgment).

**PARAGRAPH NO. 11:**

PNC pressured Meehan to ignore PNC's own policies that requires either a new appraiser or field review be conducted in such circumstances. (PNC Commercial Real Estate Appraisal Procedures July 2011, Exhibit G, §§ 6.4.5 and 6.4.6, at Meehan03499)

**RESPONSE:**

Deny and object.  Paragraph 11 does not set forth facts but rather a conclusory statement

not supported by the cited documents, which is improper for purposes of summary judgment.

*Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at *1 (E.D. Mo. June 23, 2005) (noting

statement of facts contained legal arguments and conclusory statements rather than issues of fact

required by local rules and were inappropriate for summary judgment consideration); *see also*

*Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at *2 (W.D. Mo. Mar. 4, 2009) (citing

5

56484497v.1

cases denying summary judgment where statements of fact included legal arguments and conclusions which were "wholly improper" and inappropriate for summary judgment).

**PARAGRAPH NO. 12:**

Meehan was assigned two daycare property appraisals to review in late September 2015. (October 2015 Reviews, Exhibit L, Meehan002221–02230, at 2221; Meehan002475– 02484, at 2475)

**RESPONSE:**

Admit.

**PARAGRAPH NO. 13:**

Neither of the appraisals mentioned the licensed capacity of the daycare centers. This was important information because the use of the property would be limited depending on the number of licenses each property could receive from the State of New Jersey. (October 2015 Reviews, Exhibit L, Meehan002362–02376, at 2373, 2374; Meehan Interrogatory, Exhibit C, at p. 5)

**RESPONSE:**

Deny and object.  Paragraph 13 contains conclusory statements, not facts, which are improper for purposes of summary judgment, and further misstates the record evidence.  *Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at *1 (E.D. Mo. June 23, 2005) (noting statement of facts contained legal arguments and conclusory statements rather than issues of fact required by local rules and were inappropriate for summary judgment consideration); *see also Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at *2 (W.D. Mo. Mar. 4, 2009) (citing cases denying summary judgment where statements of fact included legal arguments and conclusions which were "wholly improper" and inappropriate for summary judgment).  Further responding, the final report for the day care center, signed by PNC employee Paul Higgins on October 21, 2015, states:

> The property was previously appraised by the same appraiser in May 2014 and the value conclusion did not change.  An additional sales comparable analysis based on price per licensed child in addition to sales price per square foot of the GBA was initially requested during the review process.  However, this analysis

6

56484497v.1

was later determined not necessary to fill the evaluation requirement of this request.  In addition, the sale price per licensed child did not consider the mix of infant, toddler, or preschool daycare, nor did it have a ***credible impact on the value conclusion***.  The appraisal as currently presented adequately supports the value conclusion.

(Meehan Dep. Ex. 16, at PNCMeehan000276, emphasis added.)

**PARAGRAPH NO. 14:**

Meehan emailed the appraiser the relevant information, including support from the Appraisal Institute, and also emailed REVS supervisors Doug Schoenberg, Paul Higgins, and Diana Pocker. (October 2015 Reviews, Exhibit L, Meehan002362–02376; Meehan02342–02346)

**RESPONSE:**

Deny as stated.  The documents cited do not include any "support from the Appraisal Institute" but rather handwritten "answers from the class session" he took at an unknown time with the Appraisal Institute regarding "Advanced Sales Comparison & Cost Approaches."  There is no authority from the Appraisal Institute regarding how to appraise a daycare facility.

**PARAGRAPH NO. 15:**

When the appraiser went back and factored in the license capacity of the properties, each declined in value. October 2015 Reviews, Exhibit L, Meehan002252–2255, at 02252; Meehan02475–2484, at 2475)

**RESPONSE:**

Deny as stated.  When the appraiser attempted to calculate the value of the property based on price per licensed child, as opposed to price per square foot, the overall value of the property went own, however it was not a credible analysis.  (Meehan Dep. Ex. 15, at Dkt. 51, Exhibit 15.)

**PARAGRAPH NO. 16:**

On October 14, 2015, Diana Pocker called and told Meehan she was not comfortable with the revised appraisals and change in value of the properties. She sent Meehan an email the following day asking to revert to the original appraisals. (October 2015 Reviews, Exhibit L, Meehan002232–2233; Meehan Interrogatory, Exhibit C, at p. 5)

**RESPONSE:**

Deny as stated. There is no evidence that Diana Pockar called Meehan and the statement

is inadmissible hearsay. Regardless, the statement misrepresents the substance of the document

cited. Instead, the email states:

> Hi Joe, I was thinking more about this report over the last day and actually called the vendors based on our conversation last evening that properties in this market do not sell on a per child licensed basis. I'm concerned that the valuation is not significantly supported as the analysis appears to not be supported.
>
> My suggestion is to revert back to the original analysis and accept the basis for which the appraisers originally included. **This is a strong market and I am afraid that if the appraisers have not seen analysis like this, ever, it's just not credible.** I am not able to get my arms around it entirely, but was just thinking, what if the number of licenses change, either for the property or the comparables, the value is a moving target. Do the licenses get issued to the business or do they run with the real estate? One of the comps, page 50 states that the property is licensed for 457 children, but rent is based on actual enrollment, which we know can change at any time.
>
> **Please let me know if we have your approval to just go back to the original analysis, which is what was completed last year.**

(Dkt. 51, Exhibit 14, Meehan002231-33, emphasis added.)

**PARAGRAPH NO. 17:**

Meehan declined to have the appraisers revert back to the original analysis as it would be misleading and fraudulent according to USPAP requirements. It also would be a violation of FDIC and OCC guidelines to ask the appraisers to omit all reference to the legal use of the property and analysis, which would cause the assignment to be biased. (Meehan Deposition, Exhibit A, 158:17-25)

**RESPONSE:**

Deny as stated and object. Paragraph 17 contains conclusory statements, not facts, which

are improper for purposes of summary judgment, and further misstates the record evidence.

*Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at *1 (E.D. Mo. June 23, 2005) (noting

statement of facts contained legal arguments and conclusory statements rather than issues of fact

required by local rules and were inappropriate for summary judgment consideration); *see also*

8

*Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at *2 (W.D. Mo. Mar. 4, 2009) (citing

cases denying summary judgment where statements of fact included legal arguments and

conclusions which were "wholly improper" and inappropriate for summary judgment).  Further

answering, see Response to Paragraph 13.

**PARAGRAPH NO. 18:**

The next day, on October 16, 2015, one of the daycare properties' ("Hamilton daycare") appraisal review assignment was taken from Meehan and assigned to Paul Higgins. (October 2015 Reviews, Exhibit L, Meehan002358–2359, 2348–2356, at 2348; Meehan Interrogatory, Exhibit C, at p. 5)

**RESPONSE:**

Deny as stated.  There is no evidence that the appraisal review assignment was "taken

from Meehan" but rather, that Paul Higgins was completing "a second review."  (Exhibit L at

Meehan002358-59.)

**PARAGRAPH NO. 19:**

Between October 15 and October 20, 2015 Someone at PNC asked or directed the appraiser to remove all reference to the licensed capacity at the subject and the comparable sales and rentals, remove all references regarding the governmental regulations and restrictions that encumber the property, remove all analysis pertaining to price per child and rent per child, and resubmit the original appraisals of the two properties. This was a violation of FDIC regulations and USPAP (Meehan Deposition, Exhibit A, 163:24–25, 164:1–25, 165:1–20, and 166:16–22) (Meehan Interrogatory, Exhibit C, at p. 5)

**RESPONSE:**

Object.  The evidence cited does not support the conclusory statements and legal

conclusions in Paragraph 19, none of which are proper for purposes of summary judgment, and

further misstates the record evidence.  *Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at

*1 (E.D. Mo. June 23, 2005) (noting statement of facts contained legal arguments and conclusory

statements rather than issues of fact required by local rules and were inappropriate for summary

judgment consideration); *see also Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at *2

56484497v.1

(W.D. Mo. Mar. 4, 2009) (citing cases denying summary judgment where statements of fact included legal arguments and conclusions which were "wholly improper" and inappropriate for summary judgment).  Further answering, see Response to Paragraph 13.

**PARAGRAPH NO. 20:**

It is a violation of FDIC regulations and USPAP to ask someone to remove relevant information from an appraisal which results in an increase in value is a violation of USPAP and FDIC regulations, which states, "[t]o ensure their independence, such lending officials, officers, or directors must abstain from any vote or approval involving loans on which they ordered, performed, or reviewed the appraisal or evaluation.") (FDIC Interagency Appraisal and Evaluation Guidelines 2010, Exhibit J, § V, p. 3)

**RESPONSE:**

Object.  Paragraph 20 contains conclusory statements, not facts, which are improper for purposes of summary judgment.  *Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at *1 (E.D. Mo. June 23, 2005) (noting statement of facts contained legal arguments and conclusory statements rather than issues of fact required by local rules and were inappropriate for summary judgment consideration); *see also Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at *2 (W.D. Mo. Mar. 4, 2009) (citing cases denying summary judgment where statements of fact included legal arguments and conclusions which were "wholly improper" and inappropriate for summary judgment).

**PARAGRAPH NO. 21:**

The Appraiser then submitted second revised reports with all references to licensing removed and the values were raised to the original amounts. The reports were identical to the original appraisals except for the new transmittal dates. (October 2015 Reviews, Exhibit L, Meehan002380–2462, at 2381, 2382, and 2462; Meehan002649–2670, at 2650 and 2651; Meehan002504–2505; Meehan Deposition, Exhibit A, 165:9–20, and 166:1–22)

**RESPONSE:**

Object and deny as stated.  Paragraph 21 contains conclusory statements, not facts, which are improper for purposes of summary judgment, and further misstates the record evidence.

10

56484497v.1

*Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at \*1 (E.D. Mo. June 23, 2005) (noting statement of facts contained legal arguments and conclusory statements rather than issues of fact required by local rules and were inappropriate for summary judgment consideration); *see also Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at \*2 (W.D. Mo. Mar. 4, 2009) (citing cases denying summary judgment where statements of fact included legal arguments and conclusions which were "wholly improper" and inappropriate for summary judgment).  Further answering, see Responses to Paragraphs 13 and 16.

**PARAGRAPH NO. 22:**

On October 21, 2015, the other daycare property ("Belmont daycare") was from Meehan and assigned to Paul Higgins. (October 2015 Reviews, Exhibit L, Meehan002504–2508)

**RESPONSE:**

Deny as stated.  The cited October 21, 2015 e-mail communication shows Meehan asking Paul Higgins if the Belmont daycare property should be "re-assigned to [Paul]." (Exhibit L, Meehan002504–2508.)  There is no evidence that the appraisal review was "taken" from Meehan.

**PARAGRAPH NO. 23:**

Higgins then submitted a review that accepted the appraisals (October 2015 Reviews, Exhibit L, Meehan002348–2356, 2348 and 2356; Meehan Interrogatory, Exhibit C, at p. 5)

**RESPONSE:**

Admit.  Further answering, see Responses to Paragraphs 13 and 16.

**PARAGRAPH NO. 24:**

Higgins rated Meehan the lowest in Customer Orientation/Service rating (1 out of 5) of any individual assessed by Higgins on the Assessment Form that was part of the PNC's Work Restructuring Plan in the fall of 2015. No document has been provided to Plaintiff regarding how Higgins decided Meehan deserved a "1" in this category. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 123:17–24; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

11

**RESPONSE:**

Deny as stated and object.  Paragraph 24 contains conclusory statements, not facts, which are improper for purposes of summary judgment, and further misstates the record evidence. *Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at *1 (E.D. Mo. June 23, 2005) (noting statement of facts contained legal arguments and conclusory statements rather than issues of fact required by local rules and were inappropriate for summary judgment consideration); *see also Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at *2 (W.D. Mo. Mar. 4, 2009) (citing cases denying summary judgment where statements of fact included legal arguments and conclusions which were "wholly improper" and inappropriate for summary judgment).  The Work Restructuring Plan and the e-mail communications with PNC Human Resources discuss the competencies required for the Senior Real Estate Valuations Specialist (position held by Meehan) and the weighting criteria that would be assigned to members of the REVS Group based on the core competencies.  (*See* Dkt. 51, Exhibits 15, 17.)  Admit that Meehan received a "1" rating out of "5" for "customer orientation/services/satisfaction" category.

**PARAGRAPH NO. 25:**

By preparing two biased appraisal reports that advocates the interest of the lender, the appraiser prepared two misleading, inaccurate and not credible appraisals in violation of USPAP. (USPAP 2014-2015, Exhibit F, SR 1-1(a), (b) and (c);SR 1-2 (e) (i); SR 1-3 (b); SR 2-1(a) and (b); SR 2-2 (a) (iii); SR 2-3; Ethics Rule at p. U-7; Scope of Work Rule at U-13 and U-14; and Competency Rule at U-11)

**RESPONSE:**

Object.  Paragraph 25 contains conclusory statements, not facts, which are improper for purposes of summary judgment, and further misstates the record evidence.  *Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at *1 (E.D. Mo. June 23, 2005) (noting statement of facts contained legal arguments and conclusory statements rather than issues of fact required by local rules and were inappropriate for summary judgment consideration); *see also Anderson v.*

12

56484497v.1

*Durham D & M, L.L.C.,* 2009 WL 585653, at *2 (W.D. Mo. Mar. 4, 2009) (citing cases denying

summary judgment where statements of fact included legal arguments and conclusions which

were "wholly improper" and inappropriate for summary judgment).

**PARAGRAPH NO. 26:**

By relying exclusively on the price and rent per square foot methodologies in the appraisals, the appraiser prepared two misleading, inaccurate, and not credible appraisals in violation of USPAP. (USPAP 2014-2015, Exhibit F, Standards 1 and 2; SR 1-1(a), (b) and (c); SR 1-4(a); SR 1-4(c)(i); SR 2-1(a) and (b); SR 2-3; Ethics Rule at p. U-7; Scope of Work Rule at U-13 and U-14; and Competency Rule at U-11)

**RESPONSE:**

Object.  Paragraph 26 contains conclusory statements, not facts, which are improper for

purposes of summary judgment, and further misstates the record evidence.  *Hunter v. Ramada*

*Worldwide, Inc.,* 2005 WL 1490053, at *1 (E.D. Mo. June 23, 2005) (noting statement of facts

contained legal arguments and conclusory statements rather than issues of fact required by local

rules and were inappropriate for summary judgment consideration); *see also Anderson v.*

*Durham D & M, L.L.C.,* 2009 WL 585653, at *2 (W.D. Mo. Mar. 4, 2009) (citing cases denying

summary judgment where statements of fact included legal arguments and conclusions which

were "wholly improper" and inappropriate for summary judgment).  Further answering, see

Responses to Paragraphs 13, 16.

**PARAGRAPH NO. 27:**

By removing all references to the subject's State-regulated, licensed capacity in the appraisals submitted to PNC Bank, the appraiser knowingly prepared two misleading, inaccurate, and not credible appraisals in violation of USPAP. (USPAP 2014–2015, Exhibit F, Standards 1 and 2; SR 1-1(a), (b) and (c); SR 1-2(e)(i); SR 1-4(a); SR 2-1(a) and (b); SR 2-3; Ethics Rule at p. U-7; Scope of Work Rule at U-13 and U-14; and Competency Rule at U-11)

**RESPONSE:**

Object.  Paragraph 27 contains conclusory statements, not facts, which are improper for

purposes of summary judgment, and further misstates the record evidence.  *Hunter v. Ramada*

*Worldwide, Inc.,* 2005 WL 1490053, at \*1 (E.D. Mo. June 23, 2005) (noting statement of facts contained legal arguments and conclusory statements rather than issues of fact required by local rules and were inappropriate for summary judgment consideration); *see also Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at \*2 (W.D. Mo. Mar. 4, 2009) (citing cases denying summary judgment where statements of fact included legal arguments and conclusions which were "wholly improper" and inappropriate for summary judgment).  Further answering, see Responses to Paragraphs 13, 16.

## PARAGRAPH NO. 28:

The Reviewer, Paul Higgins, did knowingly perform the reviews with bias while advocating the interests of PNC Bank, which overstated the market value of The Property. He also knowingly allowed the appraiser to delete all references to the legal and economic characteristics of the properties that are relevant to the purpose and intended use of the appraisals.

## RESPONSE:

Object.  Paragraph 28 contains conclusory statements, not facts, which are improper for purposes of summary judgment, and fails to cite any record evidence in support.  *Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at \*1 (E.D. Mo. June 23, 2005) (noting statement of facts contained legal arguments and conclusory statements rather than issues of fact required by local rules and were inappropriate for summary judgment consideration); *see also Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at \*2 (W.D. Mo. Mar. 4, 2009) (citing cases denying summary judgment where statements of fact included legal arguments and conclusions which were "wholly improper" and inappropriate for summary judgment).

## PARAGRAPH NO. 29:

By preparing a biased appraisal review report that advocates the interest of the lender and accepting the appraisals that had removed all references to the subject's State-regulated, licensed capacities in the appraisals, Higgins prepared two misleading, inaccurate, and not credible appraisal reviews in violation of USPAP. (USPAP 2014-2015, Exhibit F, Standards 3; SR 3-1(a), (b) and (c); SR 3-2 (d) (iv); SR 3-2 (d) (h); SR 3-3 (a) (i) and (ii); SR 3-3 (b) (i); SR 3-4 (a) and

14

(b); SR 3-5 (g) and (h); SR 3-6; Ethics Rule at p. U-7; Scope of Work Rule at U-13 and U-14; and Competency Rule at U-11)

**RESPONSE:**

Object.  Paragraph 29 contains conclusory statements, not facts, which are improper for purposes of summary judgment, and further misstates the record evidence.  *Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at *1 (E.D. Mo. June 23, 2005) (noting statement of facts contained legal arguments and conclusory statements rather than issues of fact required by local rules and were inappropriate for summary judgment consideration); *see also Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at *2 (W.D. Mo. Mar. 4, 2009) (citing cases denying summary judgment where statements of fact included legal arguments and conclusions which were "wholly improper" and inappropriate for summary judgment).  Further answering, see Responses to Paragraphs 13, 16.

### PNC's culture of pressuring Meehan to ignore deficiencies in appraisals

**PARAGRAPH NO. 30:**

PNC supervisor Steve Mustain said Meehan should just hold his nose and sign his name when Meehan complained about the quality of work typically received from appraisers. (Meehan Interrogatory, Exhibit C, at p. 2)

**RESPONSE:**

Object.  The statement in Paragraph 30 is inadmissible hearsay that is improper for summary judgment and there is no evidence in the record to substantiate this claim.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).

**PARAGRAPH NO. 31:**

PNC supervisor Jeff Rettstatt said Meehan found errors in reports that he never would have found and that Meehan should only be as astute as the average reviewer. (Meehan Deposition, Exhibit A, 129:7–25, 130:1–25, 13:1–16; Meehan Interrogatory, Exhibit C, at p. 2; Meehan Self Evaluation 2014, Exhibit P, at PNCMeehan00183)

15

**RESPONSE:**

Object. The statement in Paragraph 31 is inadmissible hearsay that is improper for

summary judgment and there is no evidence in the record to substantiate this claim. *See Brown*

*v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper

to defeat a motion for summary judgment).

**PARAGRAPH NO. 32:**

PNC supervisor Jeff Rettstatt said, "Do not look for mistakes." (Meehan Deposition, Exhibit A, 129:7–25; Meehan Interrogatory, Exhibit C, at p. 1; Meehan Self Evaluation 2014, Exhibit P, at PNCMeehan00183)

**RESPONSE:**

Object. The statement in Paragraph 32 is inadmissible hearsay that is improper for

summary judgment and there is no evidence in the record to substantiate this claim. *See Brown*

*v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper

to defeat a motion for summary judgment).

**PARAGRAPH NO. 33:**

Meehan asked PNC supervisor Tom Silnes if PNC was more interested in quantity or quality and his response was PNC was production-oriented. (Meehan Deposition, Exhibit A, 132:8–11; Meehan Interrogatory, Exhibit C, at p. 2; Meehan Self Evaluation 2014, Exhibit P, at PNCMeehan00183)

**RESPONSE:**

Object. The statement in Paragraph 33 is inadmissible hearsay that is improper for

summary judgment and there is no evidence in the record to substantiate this claim. *See Brown*

*v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper

to defeat a motion for summary judgment).

**PARAGRAPH NO. 34:**

PNC supervisor Tom Silnes thought Meehan was too particular about errors found in appraisal reports and indicated it took too much time and effort to get all errors corrected. (Meehan Interrogatory, Exhibit C, at p. 2) During that same conversation, Meehan said errors

16

needed to be corrected to comply with USPAP Standard 1 regarding having a credible appraisal and he said that USPAP Standard does not pertain to PNC's needs. (Id.; USPAP 2012¬2013, Exhibit E, Standards Rule 1-1(c), p. U-16)

**RESPONSE:**

Object.  The statement in Paragraph 34 is inadmissible hearsay that is improper for summary judgment and there is no evidence in the record to substantiate this claim.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).

**PARAGRAPH NO. 35:**

Meehan discussed an undervalued property with PNC supervisor Tom Silnes, and he suggested Meehan accept it because there was less risk for the bank if the value was low. (Meehan Interrogatory, Exhibit C, at p. 2)

**RESPONSE:**

Object.  The statement in Paragraph 35 is inadmissible hearsay that is improper for summary judgment and there is no evidence in the record to substantiate this claim.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).

**PARAGRAPH NO. 36:**

PNC supervisor Tom Silnes told Meehan not go back for revisions, and he said "It's all on them. They sign the certification that it is compliant with USPAP." But Meehan said it was him, Meehan, that had to sign his name that the appraisal report is USPAP compliant.  (Meehan Interrogatory, Exhibit C, at p. 2) This would be a violation of USPAP Ethics Rule and Standard 3 Appraisal Review, Development and Reporting requirements. (USPAP 2012-2013, Exhibit E, pp. U-7, U-31, U-33, U-34, U-36, U-37).

**RESPONSE:**

Object.  The statement in Paragraph 36 is inadmissible hearsay that is improper for summary judgment and there is no evidence in the record to substantiate this claim.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).  In addition, Paragraph 36 contains conclusory

17

statements, not facts, which are improper for purposes of summary judgment, and further misstates the record evidence. *Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at *1 (E.D. Mo. June 23, 2005) (noting statement of facts contained legal arguments and conclusory statements rather than issues of fact required by local rules and were inappropriate for summary judgment consideration); *see also Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at *2 (W.D. Mo. Mar. 4, 2009) (citing cases denying summary judgment where statements of fact included legal arguments and conclusions which were "wholly improper" and inappropriate for summary judgment).

**PARAGRAPH NO. 37:**

PNC supervisor Tom Silnes also suggested Meehan not address errors in reports unless a loan officer specifically requested they be addressed. (Meehan Interrogatory, Exhibit C, at p. 2) In March 2012, Silnes asked Meehan why he had raised an issue about an appraisal and stated, "you should not have brought it up if the loan officer didn't state it in the LRM." Meehan said it would be misleading to ignore the value of the excess land (which was approximately 150 acres). Silnes asked why Meehan would be concerned about a misleading appraisal and questioned why Meehan didn't let it go. (Meehan Interrogatory, Exhibit C, at p. 3) A misleading appraisal is a violation of USPAP. (USPAP 2012-2013, Exhibit E, pp. U-7, SR2-1 (a) at U-22, SR 3-3 (b) (i) at U-34, SR 3-1 (a) and (c) at U-31, and SR 3-6 at U-36)

**RESPONSE:**

Object.  The statements in Paragraph 37 are inadmissible hearsay that are improper for summary judgment and there is no evidence in the record to substantiate these statements.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).  The documents cited in support do not reflect the statements made in Paragraph 37.

**PARAGRAPH NO. 38:**

Around July 16, 2012, a PNC loan officer wanted particular appraisal report issues addressed and PNC supervisor Greg Camburn said during a conference call, "We don't have time to get [appraisals] right. If we tried to get them all correct we wouldn't keep up with production. We're too busy." (Meehan Interrogatory, Exhibit C, at p. 3)

18

56484497v.1

**RESPONSE:**

Object.  The statement in Paragraph 38 is inadmissible hearsay that is improper for summary judgment and there is no evidence in the record to substantiate this claim.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).

**PARAGRAPH NO. 39:**

During Meehan's 2012 performance review, Meehan's PNC supervisor Doug Schoenberg said that for appraisals with a value under $3 to $4 million, to "let it go." Meehan took notes and wrote this down at the time. (Meehan Interrogatory, Exhibit C, at p. 4; Meehan 2012 Manager Evaluation Notes, Exhibit T, at Meehan03421 in right margin of page; Meehan Deposition, Exhibit A, 200:17–25, and 201:1–21)

**RESPONSE:**

Object.  The statement in Paragraph 39 is inadmissible hearsay that is improper for summary judgment and there is no evidence in the record to substantiate this claim.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).

**PARAGRAPH NO. 40:**

Schoenberg wrote in Meehan's 2013 annual review that errors might be overlooked if another approach in the appraisal is weighted more heavily (Meehan Deposition, Exhibit A, 109:10-21; Meehan 2013 Manager Evaluation, Exhibit O, at PNCMeehan0186)

**RESPONSE:**

Object, misstates the record evidence.  The 2013 Annual review states that Meehan "needs to concentrate on critical issues, especially in more non-complex assignments.  For example, errors in the Sales Comparison Approach might be overlooked if the Income Approach is done correctly and given the most weight in the value conclusion."  (Exhibit O at PNCMeehan00186.)

19

**PARAGRAPH NO. 41:**

In approximately 2014, PNC supervisor Greg Camburn left the appraisal group for another group within PNC after he reported PNC Manager Jeff Mazur to the HR Department for a violation of USPAP, and—as Meehan believes—federal banking guidelines. (Meehan Interrogatory, Exhibit C, at p. 3)

**RESPONSE:**

Object.  The statement in Paragraph 41 is inadmissible hearsay that is improper for

summary judgment and there is no evidence in the record to substantiate this claim.  *See Brown*

*v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper

to defeat a motion for summary judgment). In addition, Paragraph 41 contains conclusory

statements, not facts, which are improper for purposes of summary judgment, and further

misstates the record evidence.  *Hunter v. Ramada Worldwide, Inc.,* 2005 WL 1490053, at *1

(E.D. Mo. June 23, 2005) (noting statement of facts contained legal arguments and conclusory

statements rather than issues of fact required by local rules and were inappropriate for summary

judgment consideration); *see also Anderson v. Durham D & M, L.L.C.,* 2009 WL 585653, at *2

(W.D. Mo. Mar. 4, 2009) (citing cases denying summary judgment where statements of fact

included legal arguments and conclusions which were "wholly improper" and inappropriate for

summary judgment).

**Insufficiency of submitted appraisals and other reviewers ignoring problems**

**PARAGRAPH NO. 42:**

In May 2010, Plaintiff was told to go through supervisors before contacting REVS leadership, including Adam Barone, regarding any problems that would arise during the review process. (Meehan Deposition, Exhibit A, 83: 20–25, 84:11–15)

**RESPONSE:**

Object.  The statement in Paragraph 42 is inadmissible hearsay that is improper for

summary judgment and there is no evidence in the record to substantiate this claim.  *See Brown*

20

*v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).  Further answering, at no time between 2012 and 2015, did Meehan report to anyone in the REVS "chain of command" (i.e., Jeffrey Mazur or Adam Barone) that he believed there were ethical violations, violations of USPAP, or violations of federal banking regulations related to real estate appraisals.  (Dkt. 51, Exhibit 1, Meehan Dep. at 82-85, 176-179, 202-204.)

## PARAGRAPH NO. 43:

Meehan complained to PNC supervisor Tom Silnes that the appraisal reviews assigned to Meehan had the lowest average fee of anyone in the group. Meehan asked how such reviews were assigned, but Silnes said he didn't know. (Meehan Interrogatory, Exhibit C, at p. 2)

## RESPONSE:

Object.  The statement in Paragraph 43 is inadmissible hearsay that is improper for summary judgment and there is no evidence in the record to substantiate this claim.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).

## PARAGRAPH NO. 44:

Meehan often complained to PNC Supervisor Douglas Schoenberg about the lack of appraisal quality, that appraisers do not proof their work, and how time-consuming it was to get a USPAP compliant report from the appraisers engaged by PNC. (Meehan Interrogatory, Exhibit C, at p. 4; Meehan Deposition, Exhibit A, 99:22–25, 100:1–2, 134:15–21, and 137:6–13; Meehan 2012 Manager Evaluation, Exhibit N, at PNCMeehan0194)

## RESPONSE:

Object.  The statement in Paragraph 44 is inadmissible hearsay that is improper for summary judgment and there is no evidence in the record to substantiate this claim.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).  Further answering, the cited documents do not support the statements made in Paragraph 44.

21

**PARAGRAPH NO. 45:**

PNC has testified that it would not be beneficial to have a qualified reviewer conduct a risk-based secondary review of a sample of each reviewer's work products at the REVS group. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 153: 23–25, 154:1–25, 155:1–25, and 156:1–19). The FDIC states, however, that "having a qualified reviewer conduct a risk-based, secondary review of a sample of each reviewer's work products can help achieve consistency in the review process, monitor the effectiveness of the reviewers, and address any weaknesses in a timely manner. (Navigating the Real Estate Valuation Process, FDIC Supervisory Insights, Winter 2011, Exhibit K, p. 4)

**RESPONSE:**

Object and deny as stated.  Paragraph 45 misstates the testimony of Rule 30(b)(6) witness

Adam Barone and PNC's review process with respect to real estate appraisal reviews.  Barone

testified:

> So your indication is, our process by which we basically have an appraisal, we have somebody review that appraisal that's competent, okay, and is well trained and maintains a level of training that they should be able to perform their job duty.  As part of their performance of their job duty, they have a form that they need to complete.  This form is written and designed in such a way it will identify weaknesses in the reviewer's work product based on how [it's designed].  So from that perspective, the supervising appraiser is in a position to identify weaknesses or concerns in a review appraiser's work such that they will go back and do further due diligence.

Barone Dep. at 154-55.  Barone went on to state:

> I don't know how you guard against someone lying so -- or being dishonest.  But your assumption is the original appraiser's not getting it right on a regular basis and it's not the case.  For the most part, appraisals when they're delivered to the bank [are correct] because appraisers risk losing their licenses when they perform inadequate work.  When they provide us something, it's done to a USPAP and FIRREA compliance level, at least in their minds, with the idea that potentially there will be a critique, but at the end of the day, when all issues are resolved, appraiser are delivering reports that will keep their livelihood in place because that's what they jeopardize when they don't deliver reports that are credible.

(*Id.* at 156.)

**PARAGRAPH NO. 46:**

Many times when Meehan reviewed appraisals of properties previously submitted to another PNC Reviewer, Meehan would find issues that were not properly addressed by the first reviewer. When Meehan addressed deficiencies with those appraisers, they would simply say

22

that the appraisal was approved before by PNC. (Meehan Self Evaluation 2014, Exhibit P, at PNCMeehan0182)

**RESPONSE:**

Object.  The statement in Paragraph 46 is inadmissible hearsay that is improper for summary judgment and there is no evidence in the record to substantiate this claim.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).

**PARAGRAPH NO. 47:**

On June 5, 2013, PNC supervisor Douglas Schoenberg presented to the REVS group regarding an Appraiser Review Panel Discussion, where the participants stated that appraisers make simple, careless errors and it seems like a number of vendors depend on appraisal reviewers to do their proofreading. Also, Schoenberg discussed the lack of competence of some appraisers. (Meehan Interrogatory, Exhibit C, at p. 4; 2013 REVS Team Meeting Agenda & Minutes, Exhibit W, at Meehan04498)

**RESPONSE:**

Object.  The statement in Paragraph 47 is inadmissible hearsay that is improper for summary judgment and there is no evidence in the record to substantiate this claim.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).  Further answering, the documents cited do not support the statements contained in Paragraph 47.

**PARAGRAPH NO. 48:**

In June 2013, Meehan received push-back from a supervisory appraiser after Meehan requested the appraiser use more appropriate sales comparisons for an appraisal ("Applied Medical Technology Review"). Paul Higgins wrote that the appraiser is probably following the recipe that was accepted the last couple of times by Michael Rainey, and intimated that Meehan should just sign off on the appraisal. Meehan did not sign off on it as others at PNC wanted, and he continued his request for more appropriate sales comparisons. The appraiser subsequently submitted a revised report, where the inappropriate sales were deleted and were replaced with the sales of arms-length fee simple acquisitions of buildings having similar highest- and best-use characteristics as the property at issue.(2013 Borland Church Appraisal, Exhibit CC, at Meehan01324; Meehan Deposition, Exhibit A, 237:19–25; Meehan Interrogatory, Exhibit C, at p. 5 and 14)

23

**RESPONSE:**

Object.  The statements in Paragraph 48 are inadmissible hearsay that are improper for summary judgment and there is no evidence in the record to substantiate these claims.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment). Further answering, the documents cited do not support the statements made in Paragraph 48.  In addition, Meehan testified that nowhere in USPAP does it state that to qualify as a comparable sale for purposes of an appraisal, it must be an arm's length transaction.  (Meehan Dep. at 123.)

**PARAGRAPH NO. 49:**

PNC Procurement Manager, Fred Petrie, did not agree with the appraiser's changes to the appraisal or that Meehan did not simply follow the previously approved appraisal review. (Meehan Interrogatory, Exhibit C, at p. 5; 2013 Applied Medical Technology Review, Exhibit DD, at Meehan02189 and 2192; Meehan Deposition, Exhibit A, 112:8–25, 113:1–8, 120:18–21) As a result, Petrie was upset and had Meehan's supervisor Doug Schoenberg state that Meehan was "stubborn" in Meehan's 2013 annual review. (Meehan Interrogatory, Exhibit C, at p. 5; Meehan Deposition, Exhibit A, 108:1–9, 111:4–25, 112:1–25, 113:1–8; Meehan 2013 Manager Evaluation, Exhibit O, at Meehan0185)

**RESPONSE:**

Object.  The statements in Paragraph 49 are inadmissible hearsay that are improper for summary judgment and there is no evidence in the record to substantiate these claims.  *See Brown v. Penrod,* 2018 WL 2981332, at *3 (E.D. Mo. June 13, 2018) (inadmissible hearsay is improper to defeat a motion for summary judgment).  Further answering, Meehan misstates the evidence in the record in support of the statement in Paragraph 49.  The comment of "stubborn" was something allegedly communicated by Schoenberg to Meehan, stated by Petrie.  (Meehan Dep. at 142.)  In addition, Meehan did not make any comments to his 2013 Review and instead, read and accepted them as written on February 6, 2014.  (Dkt. 51,  Exhibit 11,

24

56484497v.1

PNCMeehan00188.)  Meehan continued to be employed as a Real Estate Appraisal Reviewer for the 2014 calendar year.  (Dkt. 51, Exhibit 1, Meehan Dep.  at 141-142, 187.)

**Unlawful Assessment of the "Work Restructuring Plan"**

**PARAGRAPH NO. 50:**

The Assessment Form ("Form" found on PNCMeehan0265) lists Paul Higgins as the Assessing Manager, and it was Higgins that performed the assessment of the ten individuals listed in table in the center of the Form. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 113–115; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)[1]

**RESPONSE:**

Admit.

**PARAGRAPH NO. 51:**

Only two of the ten individuals' names are visible—Joseph Meehan and Matthew Green. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 122; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)[1]

**RESPONSE:**

Admit.

**PARAGRAPH NO. 52:**

Adam Barone is listed on the Form as the Approving Manager and Barone signed the Form on October 13, 2015. The only date on the Form is the hand-written date of October 13, 2015. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 114; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

**RESPONSE:**

Admit.

**PARAGRAPH NO. 53:**

Defendant does not know when Higgins performed the assessment, or when this Form was presented to Barone for his signature. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 114–115; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

---

[1] Plaintiff will only cite to Defendant's Exhibits 15 and 17, and will not include them as his own exhibits because they were filed under seal.

25

**RESPONSE:**

Deny as stated.  On August 26, 2015, PNC Human Resources received the core competencies and weights assigned to them for purposes of the Work Restructuring Plan.  (Dkt. 51, Exhibit 15.)  On September 23, 2015, the Work Restructuring Plan, replete with the core competencies and recommendation for the elimination of three positions from the REVS Group, was submitted to PNC legal for approval.  (Dkt. 51, Exhibit 17.)  Accordingly, Higgins performed the assessment between August 26, 2015 and September 23, 2015, and the notification date for the individuals was between October 13, 2015 and October 26, 2015.  *Id.*

**PARAGRAPH NO. 54:**

The Assessment Form has five categories or criteria to be applied to each individual, with each category weighted differently. The score of each individual is set out under each criterion and then multiplied by each criterion's respective weight. Adding up the total of each criterion provides a total score. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 120–122; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

**RESPONSE:**

Admit.

**PARAGRAPH NO. 55:**

Defendant does not know how Higgins applied the criteria to each of the individuals and how each individual received their score. Defendant does not know why any particular individual received higher or lower scores than the others. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 118:25–119:4, 115; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

**RESPONSE:**

Admit that Paragraph 55 accurately reflects that Adam Barone did not know how Paul Higgins performed his assessment.  Further answering, Barone testified that process was set up so that Human Resources acted as the intermediary and no one person in the REVS Group would be in control of performing the assessment, which is why Barone assigned the criteria and scoring system, and Higgins performed the assessment.  (Barone Dep. at 164-165.)

26

56484497v.1

**PARAGRAPH NO. 56:**

For example, Meehan received the lowest Customer Orientation/Service rating (1 out of 5) of any individual assessed by Defendant. Defendant does not know why. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 123:17–24; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

**RESPONSE:**

Denied as stated.  Barone testified that process was set up so that Human Resources acted as the intermediary and no one person in the REVS Group would be in control of performing the assessment, which is why Barone assigned the criteria and scoring system, and Higgins performed the assessment.  (Barone Dep. at 164-165.)  See also Dkt. 51, Exhibits 15, 17.

**PARAGRAPH NO. 57:**

For 2012, 2013, and 2014, Meehan received "Meets All Expectations" for Customer Service on his yearly evaluations. (Meehan 2012 Manager Evaluation, Exhibit N, at PNCMeehan0197; Meehan 2013 Manager Evaluation, Exhibit O, at PNCMeehan0186; Meehan 2014 Manager Evaluation, Exhibit Q, at PNCMeehan0175)

**RESPONSE:**

Admit.

**PARAGRAPH NO. 58:**

Meehan received the lowest Teamwork rating (2 out of 5) of all the individuals assessed by Defendant. Defendant does not know why. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 123:25–124:8; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

**RESPONSE:**

Deny as stated.  In 2012, 2013, and 2014, Meehan received feedback in his evaluations regarding his need to focus on more critical issues. For example, in his 2013 Managerial Evaluation of Meehan, Schoenberg commented that: "Joe indicates in his self-assessment that he is "exceptionally demanding" in the review process. My perception is that this is correct. His analysis of appraisal technique and methodology is very strong. However, he needs to concentrate on critical issues, especially in more non-complex assignments. For example, errors

27

in the Sales Comparison Approach might be overlooked if the Income Approach is done correctly and given the most weight in the value conclusion." (Dkt. 51, Exhibit 11, PNCMeehan00186.)   If Meehan took any issue with the comments in his 2013 Review, he had an opportunity to address such issues and write a response in Section 9 of the review, which he did not do.  (Dkt. 51, Exhibit 11, PNCMeehan00187; see also Dkt. 51, Exhibit 1, Meehan Dep. 110-111.)

## PARAGRAPH NO. 59:

For 2013 and 2014, Meehan received "Meets All Expectations" for Teamwork on his yearly evaluations. (Meehan 2013 Manager Evaluation, Exhibit O, at PNCMeehan0185; Meehan 2014 Manager Evaluation, Exhibit Q, at PNCMeehan0175). "Teamwork" was not a category on his 2012 evaluation. (Meehan 2012 Manager Evaluation, Exhibit N, at PNCMeehan0193–198)

## RESPONSE:

Admit.

## PARAGRAPH NO. 60:

Meehan tied for lowest in the Productivity rating (1 out of 5) with Matthew Green. Defendant does not know why. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 123:10–16; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

## RESPONSE:

Deny as stated.  Barone testified that process was set up so that Human Resources acted as the intermediary and no one person in the REVS Group would be in control of performing the assessment, which is why Barone assigned the criteria and scoring system, and Higgins performed the assessment.  (Barone Dep. at 164-165).  See also Dkt. 51, Exhibits 15, 17.

## PARAGRAPH NO. 61:

For 2013 and 2014, Meehan received "Meets All Expectations" for Productivity on his yearly evaluations. (Meehan 2013 Manager Evaluation, Exhibit O, at PNCMeehan0184; Meehan 2014 Manager Evaluation, Exhibit Q, at PNCMeehan0174).

## RESPONSE:

Admit.

28

**PARAGRAPH NO. 62:**

Similarly, Defendant does not know why Meehan received a "4" for Managing Risk and a "3" for Leading Change. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 123–124; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

**RESPONSE:**

Deny as stated.  Barone testified that process was set up so that Human Resources acted as the intermediary and no one person in the REVS Group would be in control of performing the assessment, which is why Barone assigned the criteria and scoring system, and Higgins performed the assessment.  (Barone Dep. at 164-165).  See also Dkt. 51, Exhibits 15, 17.

**PARAGRAPH NO. 63:**

The two individuals with the lowest total scores were Joseph Meehan and Matthew Green, and they were the only two reviewers selected for termination. (PNC Corp. Rep. Deposition by Adam Barone, Exhibit B, 122:19–123:1; Restructuring Plan, Def. Sealed Ex. 17, at PNCMeehan00265)

**RESPONSE:**

Admit.  In addition, PNC also eliminated the position of an administrative assistant.  The reason for the Workforce Restructure Plan was because "The Real Estate Valuations group has experienced a decrease in the volume of appraisal reviews over the past year and it is currently anticipated there will be no near term increases in volume."  (Dkt. 51, Exhibit 17.)  Further answering, REVS appraisal volume has continued to decrease.  (Dkt. 51, Exhibit 16, PNCMeehan00281; Dkt. 51, Exhibit 2 at 163-164.)  Specifically, in 2013 the REVS Group processed 14,324 appraisal assignments.  In 2017, the REVS group processed only 5,159 appraisal assignments.  (Dkt. 51, Exhibit 16.)  Further answering, since the elimination of Mr. Meehan's position; two other REVS employees have had their positions eliminated, and the REVS group has continued to downsize as employees have retired or taken positions with other

29

banks.  (Dkt. 51, Exhibit 2, Barone Dep. at 165-66; Dkt. 51, Exhibit 1, Meehan Dep. 208-209,

216-217.)

**DATED**:  **April 26, 2019**                    Respectfully submitted,

                                                **THE PNC FINANCIAL SERVICES GROUP, INC.**


                                                By: /s/ *Robyn E. Marsh*
                                                        *One of Its Attorneys*


Erin Dougherty Foley (edfoley@seyfarth.com)
Robyn E. Marsh (rmarsh@seyfarth.com)
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:     (312) 460-5000
Facsimile:     (312) 460-7000

Robert E. Jones (rejones@chgolaw.com)
CURTIS HEINZ GARRETT & O'KEEFE, P.C.
130 South Bemiston, Suite 200
St. Louis, MO 63105-1913
Telephone:  (314) 725-8788
Facsimile:  (314) 725-8789

*Attorneys for Defendant*
THE PNC FINANCIAL SERVICES GROUP, INC.

56484497v.1

## CERTIFICATE OF SERVICE

I, Robyn E. Marsh, an attorney, do hereby certify that on April 26, 2019, I caused a true and correct copy of the foregoing to be served upon all counsel of record via the Court's ECF system.

/s/ Robyn E. Marsh
Robyn E. Marsh

56484497v.1